## No. 16,377.

PHILLIPS ET AL. *v.* CHRISTENSEN.
(216 P. [2d] 659)

Decided March 6, 1950.

Mr. JOHN IRA GREEN, Mr. MERLE M. MARSHALL, for plaintiffs in error.

Mr. RAPHAEL J. MOSES, Mr. WILLIAM O. DESOUCHET, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

EIGHT years after a divorce proceeding, the father, defendant in error, the mother consenting, was awarded custody of their ten year old son as against the boy's maternal grandparents who had intervened. The latter appear here as plaintiffs in error seeking reversal.

The father and mother of the boy were divorced July 21, 1942, the interlocutory decree dividing the periods of custody evenly between the parents. A modified consent decree dated March 30, 1943, awarded sole custody to the mother. The father at that time removed to California, and the decree provided that he should turn over to the mother a twenty-five dollar war bond each month toward the child's support, which the trial court found had been done. He remarried in 1943, entered the United States army in 1944, and was honorably discharged in 1946. The child's mother lived with her parents for a time, although for short periods she was in Glenwood Springs, Colorado, and in the states of Washington and Arizona, and had the child with her. She has since remarried and is now living in Wyoming. The mother finally left her young son with his grandparents to be cared for by them, and the latter, on May 7, 1946, filed a petition in dependency in the county court of Conejos county and the boy was ordered committed to their care. The finding of the trial court included the following statement: "Since July, 1946, the Phillips have had the exclusive, actual, custody of the child contrary to the divorce decree, under an invalid judgment, rendered without notice." It appears that the father had no notice of the dependency proceeding.

The instant case arose when the father, on May 3, 1949, moved to modify the divorce decree by asking for sole custody of his son. This motion was supported by a stipulation signed by the mother, agreeing that the father should have the custody of their son. The grand-

parents Phillips then intervened, with the result as above indicated — the judgment providing that the father, in view of his nonresidence in Colorado, should enter into a $2,000 bond conditioned upon his compliance with future orders of the court.

The specification of points sets forth that the court erred in entering its findings and judgment and in awarding the custody of the minor child, Donald Ward Christensen, in that: (a) The findings were against the weight of the evidence. (b) The findings and judgment were not based upon the principle that the welfare and interest of the child is the primary question in child custody cases. (c) The evidence shows that the best welfare of the child demands that he be in the custody of plaintiffs in error. (d) The court considered he was bound by a rule of law announced by one case, which is not the proper rule to be applied in the instant case. (e) There is no hard and fast rule to be applied, but each case calls for the exercise of sound discretion; (f) Which in this case was abused. (g) There was no change in conditions or circumstances warranting the change in custody.

The father and his second wife testified at the hearing. Their testimony was to the effect that they were then the parents of two children, a boy and a girl; that the father was employed as a Fuller brush salesman with annual income averaging $3,500; that he owned two houses in California, one of which he rented and the larger one he used for their home; that his wife was not gainfully employed, but spent all her time keeping house and bringing up the children.

The grandparents are residents of La Jara, Colorado, where they own a tavern, their living quarters being on the second floor of the building in which the tavern occupies the first floor. They also own a small ranch in their home county, but the major part of their income is from the tavern which they operate. Mrs. Phillips testified that her husband was a sick man, and very

ill; that she is now in good health, although having come to La Jara with tuberculosis many years earlier.

The case to which reference is made in specification (d) is *Wilson v. Mitchell*, 48 Colo. 454, 111 Pac. 21. In that case a mother and father, after a divorce decree awarding custody to the father, placed their young son with its paternal grandparents, who were at the time in much better circumstances. In the course of time the following events occurred in the order named: the mother married again a man of good standing and in comfortable circumstances; the former husband died; a daughter was born of the second marriage; the mother brought habeas corpus proceedings to obtain custody of her son, born of the first marriage, whom the paternal grandparents refused to surrender; and this court affirmed the judgment of the trial court, awarding custody to the mother.

In the instant case it is the maternal grandparents with whom the boy was left. It is the father who subsequently marries, is able to provide a suitable home, and seeks the custody of his son so that the latter may be brought up with his half brother and half sister. Here the mother—having remarried—consents that the father shall have the custody of their ten year old boy, leaving the contest for custody one between the father and the maternal grandparents instead of, as in *Wilson v. Mitchell, supra,* one between the mother and the paternal grandparents.

■ As to specifications (a) and (c), we are of the opinion that the findings of the court were not manifestly against the weight of the evidence; that the court did not err in its findings and judgment, and that the "entire evidence and the record as a whole" does not show "that the interest and welfare of the minor child, Donald Ward Christensen, would be best subserved under the control and custody of the plaintiffs in error."

■ As to specification (b) and (d), we do not be-

lieve that the trial court erred because of any failure to consider the fact that in cases involving the custody of minor children the primary and controlling question is the welfare and interest of the child. When the trial court resolved the case in accordance with the principles of law laid down in *Wilson v. Mitchell, supra,* he necessarily applied that principle. The opening sentence of the first paragraph of Mr. Justice White's opinion in that case reads: "In controversies affecting the custody of an infant, the interest and welfare of the child is the primary and controlling question by which the court must be guided." How that principle is applied in cases in which a parent or parents are involved on one side and other persons on the other, is the subject matter of the opinion, pertinent excerpts from which are quoted herewith. Italics have been supplied to indicate that however the rule is stated, no custody is justified which is inimicable to the best interests of the child.

"But as government should never interfere with the natural rights of man, except only when it is essential for the good of society, the state recognizes, and enforces the right which nature gives to parents to the custody of their own children, and only supervenes with its sovereign power when the *necessities of the case require it.*

\* \* \*

"Accordingly these recurring facts, in the experience of man, resulted in a presumption establishing, *prima facie,* that parents are in every way qualified to have the care, custody, and control of their own offspring, and that *their welfare and interests are best subserved under such control.*

"Thus by natural law, by common law, and likewise the statutes of this state, the natural parents are entitled to the custody of their minor children, *except when they are unsuitable persons to be intrusted with their care, control and education,* or *when some excep-*

*tional circumstances appear which render such custody inimical to the best interests of the child.*

\* \* \*

"In *United States v. Green*, 3 Mason's Rep. 482, 485, the court, speaking through Justice Story, after declaring that in a general sense the right of the father to have the custody of his infant child is certain, continues: 'But this is not on account of any absolute right of the father, but *for the benefit of the infant, the law presumes it to be for its interest* to be under the nurture and care of his natural protector, both for maintenance and education.'

\* \* \*

"We are firmly of the opinion that in all cases of this character the presumption is, that the parents are fit and suitable persons to be intrusted with the care of their minor children, *and that the interests and welfare of such children are best subserved when under such care and control;* that such presumption is like unto the presumption of innocence in a criminal case, ever present, throughout the controversy, until overcome by the most solid and substantial reasons established by plain and certain proofs. Indeed, this presumption is essential to the maintenance of society, for without it, man would be denaturalized, the ties of family broken, the instincts of humanity stifled, and one of the strongest incentives to the propagation and continuance of the human race destroyed.

\* \* \*

"But mere speculation as to the probability of benefit to the child by leaving or returning it, should have but little weight, and the courts should, and will, enforce the parent's right to the custody of the child, unless it clearly appears *that the welfare and interest of such child will be best subserved by denying it.*"

If there is any doubt as to what the trial court in the instant case conceived to be the purpose of the trial, it would seem to be dissolved by his following findings:

"In the case we are trying here we have a young child, ten years old, in the hands of aging people. The grandmother testified that she is just as old as this century; that is, that she is forty-nine; that the grandfather is somewhere between fifty and sixty. * * * Nice people. Nothing can be said against them. But they will be in their grave just at the time this young man, if he lives, requires attention, advice and the benefit of sound judgment. The experience of doing things with his own hands and associating with other members of his own blood for that growing child is not in sight in the interveners family.

\* \* \*

"You take the other proposition: The Christensen's have two children already coming up, little people. Christensen's wife is here present, a conscientious, upright person. The testimony shows she does not take in washings nor go out to work * * * she said she devoted her entire time to the care of her family. * * * " Certainly the one prevailing theme of the foregoing discussion is the question, "what is the best interest of the child."

■ We are of the opinion that as to specifications of points: (e) The trial court did exercise its sound discretion as to what was for the welfare of the child; (f) there is no indication that it abused its discretion; and (g) the record affirmatively shows there was a change in the conditions and circumstances which fully warranted a modification of the decree.

With further reference to specification (d), much is made by counsel for the grandparents of the following statement of the trial court in referring to *Wilson v. Mitchell, supra:* "Now I believe that is as controlling here as a pair of handcuffs." They contend it may properly be inferred that the trial judge, had he not felt bound by the case of *Wilson v. Mitchell, supra,* would have decided this case otherwise. We do not so interpret his words. We are of the opinion that he was

simply emphasizing the similarity of the two cases. At the beginning of the paragraph from which counsel take their quotation, it will be noted that he makes the more conventional statement that: "The case here before us, in a great majority of the facts, is so similar to the *Wilson vs. Mitchell* case, which is reported in 48 Colorado at page 454 as to be governed entirely by that case." It is our opinion that he concluded his paragraph as above indicated with the same thought. Again, if there could be any doubt as to the trial court's position, we believe it is dispelled by the concluding sentence in his findings, just preceding the final order, reading: "But you will never find in litigating these kind of cases two cases which are more similar than this and the Wilson vs. Mitchell case and I feel bound by it and I have not the slightest feeling that I should exercise arbitrary or capricious power or to substitute my own judgment, if indeed my own judgment did conflict with it, for the rule of written law." We are of the opinion that there is every indication, from the trial judge's final statement on the subject, that his own judgment of what was for the best interests of the child did not conflict with the rule laid down in *Wilson v. Mitchell, supra,* and that the rule should be applied in the instant case.

We have applied the principle of *Wilson v. Mitchell, supra,* in *Averch v. Averch,* 104 Colo. 365, 90 P. (2d) 962; *Fouts v. Pedrick,* 111 Colo. 141, 137 P. (2d) 1019; *Fatur v. Huff,* 112 Colo. 213, 147 P. (2d) 477. See, also, 128 A.L.R. 992.

Judgment affirmed.

Mr. Justice Alter dissents.