No. 18,649.

FRANCES M. COULTER *v.* DAVID F. COULTER.

(347 P. [2d] 492)

Decided December 14, 1959.

Messrs. GREENBERG & YOELIN, for plaintiff in error.

Mr. T. LEE WITCHER, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

THE matter here presented for review concerns an order of the district court denying a petition for modification of the award of custody of a minor child made in a 1952 divorce decree "subject to the further order of the court." The plaintiff in error here was the wife, defendant in the divorce action, and petitioner in the trial court. She seeks reversal of the order denying her petition. Defendant in error was the plaintiff in the original divorce action.

The interlocutory decree of divorce was granted to the plaintiff-husband on May 31, 1952. Its pertinent provision reads:

" * * * It is further

"ORDERED, ADJUDGED AND DECREED, that the sole care, custody and control of the minor child, Namely: Roderick James Coulter is hereby awarded to The mother of the plaintiff herein, Mrs. Marion G. Coulter until the further order of this Court."

Mrs. Coulter and her husband are 53 years of age and were shown by the evidence to have had a family of six children, one of whom although grown is still at home. She has had custody of the child since he was a baby, following the separation of the plaintiff and defendant on December 1, 1951.

During their brief marriage the plaintiff and defendant had lived in Canon City, but when the separation occurred defendant moved to Denver, taking the child with her. Her testimony shows that she had no place to keep the child — that she was then only 18 years of age, was living with her sister in Denver and working as a waitress. She voluntarily delivered custody of the child to her mother-in-law and shortly afterwards a stipulation was entered into in which defendant agreed to such custody arrangement until the further order of the court.

As a justification for this relinquishment, defendant testified that plaintiff had failed to provide support, that she was then in ill health, was impoverished and was

mentally and emotionally upset to the extent that her judgment was impaired.

At the time of the hearing she had been remarried for four years. She had seen the child at irregular intervals during the seven year period he was in the custody of Mrs. Coulter. Normally she visited him once every three months and stated the reason for the infrequency of her visits was that she was required to travel to Canon City. During one Christmas holiday period the child visited in her home.

The basis for her present petition is that she is now remarried to a man who is in business, and she is now financially able to care for the child; has an adequate and stable home and is in a position to devote her full attention to the child.

The record is remarkably free of disputed facts. The defendant readily concedes that the child has been and is now receiving proper care and training; that the home now provided by the grandparents is a proper one. There is no suggestion that the child has not or is not now responding in his present environment. As we understand defendant's position, it is that she is capable of providing similar environmental comforts and influences and, in addition, can furnish a mother's love and attention. The record is also free of evidence indicating personal rancor, so often present in controversies of this kind. The only rift arises from the claim of defendant that she has not had free visitation access to the child. On some occasions the child has not been present, according to her testimony, when she arrived, and her visits have been discouraged. This was denied by Mr. and Mrs. Coulter.

The trial court's denial of defendant's petition was based mainly on its conclusion that the grant of custody to the grandparents was intended to be more or less permanent in nature. The court also seemed to be persuaded by the fact that the defendant's remarriage had occurred some four years prior to the filing of the peti-

tion, during which time she had failed to make any effort to effect a change in custody. The court finally concluded:

"And it is the opinion of the Court that this situation that we find ourselves in now with respect to the care and custody of this child, the agreement in connection with which she was given custody of the child, is such that it overcomes the strict rule of law as laid down by the Courts, that it is an exception and supersedes the strict rule of law, and that the circumstances are such, the evidence is such, that I can't come to the conclusion or the belief that it would be for the best interests of this child to change or modify the decree.

"I think the petition, the evidence fails to support the petition, and the evidence of the plaintiff in this case takes it out of the strict legal rule, and that it is for the best interest of this child that this petition be denied, and is denied."

In support of her demand for reversal, defendant relies on the following cases: *Wilson v. Mitchell,* 48 Colo. 454, 111 Pac. 21; *Averch v. Averch,* 104 Colo. 365, 90 P. (2d) 962; *Fouts v. Pedrick,* 111 Colo. 141, 137 P. (2d) 1019; *Emerson v. Emerson,* 117 Colo. 384, 188 P. (2d) 252; *Phillips v. Christensen,* 121 Colo. 380, 216 P. (2d) 659.

It is true that *Wilson v. Mitchell,* supra, which has been consistently cited with approval in subsequent cases, upheld the right of the natural mother to custody as against the paternal grandparents and announced that a presumption exists that the natural parents are fit and suitable persons to be entrusted with the care of their minor children and that the interests and welfare of such children are best served when under such care and control. The Court added this comment:

" * * * that such presumption is like unto the presumption of innocence in a criminal case, ever present, throughout the controversy, until overcome by the most solid and substantial reasons established by plain and

certain proofs. Indeed, this presumption is essential to the maintenance of society, for without it, man would be denaturalized, the ties of family broken, the instincts of humanity stifled, and one of the strongest incentives to the propagation and continuance of the human race destroyed.

"Unquestionably when the power of the court is invoked to place an infant into the custody of its parents and to withdraw such child from other persons, the court will scrutinize all the circumstances and ascertain 'if a change of custody would be disadvantageous to the infant.' If so, the change will not be made, 'and it matters not whether it is through the fault or the mere misfortune of the legal guardian that the infant has come to be out of his custody.' — Hochheimer's Custody of Infants, p. 29.

"But mere speculation as to the probability of benefit to the child by leaving or returning it, should have but little weight, and the courts should, and will, enforce the parent's right to the custody of the child, unless it clearly appears that the welfare and interest of such child will be best subserved by denying it."

While the *Wilson* case indicates that the natural parents have a first and prior right to custody, we do not interpret it as requiring that custody be awarded to the parent or parents merely because the evidence shows fitness and ability to care for the child. The controlling factor, recognized and applied in all of these cases, and confirmed in the *Wilson* case, is the welfare of the child. That the trial court has a continuing jurisdiction and control based upon the welfare of the child is clearly set forth in *Searle v. Searle,* 115 Colo. 266, 172 P. (2d) 837, wherein the Court said:

"It is elementary that the divorce court may from time to time modify the custodial features of its decree as the circumstances of the parents and the welfare of the child may require, especially where, as here, the former decree was in terms, 'subject to further order of the court,'

and, whether or not an application for modification of the decree shall be granted, is subject to its sound discretion. See, 27 C.J.S., pp. 1185, 1186, §317."

The mother here has demonstrated a change in her circumstances, but this alone does not compel award of custody to her. This point was made clear in *Searle v. Searle,* supra.

■ In controversies of this nature this Court must of necessity rely on the judgment and discretion of the trial court which has the advantage of personal contact with the parties, to appraise the worth of their testimony, and consider the circumstances involved and if desirable to interview the subject child. For these reasons we are reluctant to disturb a ruling of the trial court in custody matters, absent circumstances clearly disclosing an abuse of discretion. See *Harris v. Harris,* 140 Colo. 591, 345 P. (2d) 1061. For example, in *Searle,* supra, the trial court modified a previous custody order granting custody to the mother so as to allow the father to share in custody. We there held that this did not constitute abuse of discretion. So also in *Wilson v. Mitchell,* supra, this Court affirmed the trial court's award.

Undoubtedly, the trial court here was influenced by the admitted success of the present arrangement from the standpoint of the child. Although it is not apparent from the findings, the court must have concluded that there was no lack of love, affection and stability in the present environment and that the changed circumstances of the mother did not justify modification of the status quo with its attendant hazards from the standpoint of the welfare of the child. Failure of the mother to act promptly in filing the petition should not, of course, influence this important decision.

Although the matter of visitation is a problem peculiarly within the province of the trial court, we take this opportunity to observe that the mother should enjoy full rights of visitation with the cooperation of the grand-

parents, without interference, direct or indirect. Moreover, if the trial court feels that it would not be detrimental to the interest of the child that he be permitted to visit in the home of his mother, an order to this effect should be entered.

Having concluded that the matter here presented is one resting in the sound discretion of the trial court and that its ruling in the light of the evidence presented should not be disturbed, the judgment should be affirmed and it is so ordered.