# Richmond

## J. S. EATON v. HENRIETTA V. DAVIS.

October 14, 1940.

Record No. 2262.

Present, All the Justices.

The opinion states the case.

*George S. Harnsberger,* for the appellant.

*Ethel Irwin Lineweaver,* for the appellee.

GREGORY, J., delivered the opinion of the court.

On July 25, 1929, a final decree was entered by the lower court awarding Henrietta Davis (formerly Henrietta Eaton) $50 per month, as alimony. That portion of the decree is as follows: "* * * and it is, therefore, ADJUDGED, ORDERED, AND DECREED that the said J. S. Eaton pay unto the said Henrietta V. Davis, as alimony, but not in any event for a longer period than their joint lives, for the maintenance of Henrietta V. Davis, the sum of fifty dollars per month on the 1st day of each month; * * * ."

Eaton had moved the court to retain the cause upon the docket and to reserve in the decree the right thereafter to modify the award and its payment as future conditions

might require, but the court overruled his motion and the cause was stricken from the docket. An appeal from the decree was sought by Eaton but it was refused by this court. Thus the decree for the alimony became a finality.

In August, 1938, Eaton filed a bill of complaint in which he prayed that the award of alimony be reduced because he had suffered both a financial and physical decline since the decree was entered. He alleges that he is so broken in health that he is unable to perform any work and that he is now in destitute circumstances and unable to pay the alimony.

Eaton grounds his bill of complaint upon the amendment of 1938, Acts 1938, ch. 418, to Code, section 5111. Specifically he alleges that the language of the amendment of 1938 confers upon him the right to have the decree reopened and the amount of the award reduced to meet his changed financial condition.

Henrietta Davis filed her joint demurrer and answer to the bill. The principal ground of demurrer is that the legislature was without power to enact the retroactive portion of the amendment of 1938 and that the finality of the decree could not be set at naught by subsequent legislative act, and further that vested rights had accrued by reason of the decree which the legislature was powerless to invade.

The answer simply denied the allegations of the bill.

The court sustained the demurrer and dismissed the bill. In an elaborate written opinion the court decided that the amendment of 1938 was not constitutional insofar as it purported to affect the final decree for alimony, because it antedated the effective date of the amendment.

Code, section 5111, as amended in 1938, reads as follows: "Upon decreeing the dissolution of a marriage, and also upon decreeing a divorce, whether from the bond of matrimony or from bed and board, and upon decreeing that neither party is entitled to a divorce the court may make such further decree as it shall deem expedient concerning the estate and the maintenance of the parties, or either of them, and the care, custody and maintenance of their minor

children, and may determine with which of the parents the children or any of them, shall remain; and the court may, from time to time afterwards, on petition of either of the parents, revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require; and upon petition of either party may increase, decrease, or cause to cease, any alimony *that may thereafter accrue whether the same has been heretofore or hereafter awarded,* as the circumstances may make proper. Upon the entry of a decree of divorce from the bond of matrimony, all contingent rights of either consort in the real and personal property of the other then existing, or thereafter acquired, shall be extinguished."

The language italicized was placed in the statute by the amendment of 1938. It will immediately be observed that the amendment in express terms is both retrospective and prospective. It affects "any alimony that may thereafter accrue whether the same has been heretofore or hereafter awarded as the circumstances may make proper."

■ If the amendment is constitutional then Eaton has alleged in his bill sufficient facts to entitle him to the relief he sought and, of course, upon well-recognized principles we must consider the facts alleged as true upon the hearing on the demurrer. Thus we have a case in which alimony of $50 a month was awarded against Eaton in 1929, who, according to his allegation, is no longer able to pay it. Prior to the amendment of 1938, no action could have been taken to reduce the alimony because there was no such reserved right expressed in the decree. *Brinn* v. *Brinn,* 147 Va. 277, 137 S. E. 503. In other words, unless he has the right to apply for a reduction in alimony by virtue of the amendment, then he has no such right at all.

The question to be decided in this case is whether the General Assembly may enact legislation permitting a prior final decree for alimony payable monthly for the joint lives of the parties, and containing no reservation, to be reopened

and the question of alimony again inquired into and future unaccrued payments increased or decreased to meet the changed conditions of the parties.

The weight of authority is to the effect that a final decree for monthly alimony cannot be reopened. That authority is generally based on the proposition that the woman has a vested right in the monthly payments whether accrued or not, and that a statute permitting a decree to be reopened and allowing a reduction in the future monthly payments or permitting them to cease altogether to meet the changed conditions of the parties would amount to an invasion of constitutional rights and would be void.

The leading case in this country in which a statute allowing the readjustment of alimony which had been finally determined by a final prior decree was held unconstitutional is *Livingston* v. *Livingston,* 173 N. Y. 377, 66 N. E. 123, 124, 61 L. R. A. 800, 93 Am. St. Rep. 600. There the wife was granted an absolute divorce and she was awarded alimony payable annually. No reservation was expressed in the decree to the effect that the cause might be reinstated and the question of alimony again considered. At the time of the decree there was no statutory provision allowing a modification of alimony. Subsequently the legislature enacted a statute permitting the court to "annul, vary, or modify" decrees for alimony "whether heretofore or hereafter reserved." Later the husband filed a petition asking the court to reduce the amount of alimony which he had been ordered to pay in the former final decree on the ground that his financial condition was so weakened that he could not pay it.

The court held that the former wife had a vested interest in the judgment for alimony; that it was property and that the legislature was powerless subsequently to enact legislation that would permit the final judgment to be reopened and the amount of alimony reduced. The act was held unconstitutional on that ground. In characterizing the nature of her interest in the judgment for alimony the court said: "That right, as a vested interest, is property, which the

legislature is powerless to devest her of. If the interest is, as it is claimed, an expectant one, in the sense that the obligation of the defendant was a continuing one to pay alimony in the future, nevertheless the interest was one fixed by the judgment, and was not a mere contingency. It was not a capacity to acquire a right to the payment of alimony. It was a right fixed by the judgment, and hence vested in the plaintiff."

The New York court was divided in its view. Three of its seven members concluded that the judgment for alimony was not a final matter that could never be reopened regardless of changed conditions and that the very nature of alimony made it imperative that it be susceptible to increase or decrease as future circumstances would demand.

The *Livingston Case* has been considered a leading one on the subject and has been followed by the highest courts of other states. *Fuller* v. *Fuller,* 49 R. I. 45, 139 A. 662; *Blethen* v. *Blethen,* 177 Wash. 431, 32 P. (2d) 543; 97 A. L. R. 1188; 17 Am. Jur., *Divorce and Separation,* section 643.

In the absence of a reservation in the decree or a statute permitting a final decree for alimony to be reopened to meet the needs of changed conditions by increasing or decreasing future payments of alimony, the courts of this country are in conflict as to whether such a decree may be reopened. See 71 A. L. R. 726.

■ In Virginia, prior to the amendment of Code, section 5111, in 1938, a final decree for alimony could not be reopened unless there was an express reservation for that purpose in the decree. *Brinn* v. *Brinn, supra; Golderos* v. *Golderos,* 169 Va. 496, 194 S. E. 706.

■ There can be no doubt that the legislature possesses the power to enact retrospective legislation, and generally it is valid if the legislative intent is plainly manifest that the statute is to have a retroactive effect and if the statute does not have the effect of impairing the obligation of a contract and is not destructive of vested rights. The amendment of 1938 in express terms is retrospective. It is to apply to "any alimony that may thereafter accrue whether

the same has been heretofore or hereafter awarded as the circumstances may make proper." This is conclusive that the legislature clearly intended the amendment to be retrospective.

It certainly cannot be said that to give the amendment retroactive effect in the case at bar would impair the obligation of a contract. There was no contract between the parties. The sole remaining question is whether the amendment of 1938 will be destructive of a vested property right. This carries us to the further question of whether a final decree for alimony payable in the future by the month is such a right. Has Henrietta Davis such a vested property right in the decree for unaccrued alimony that is so fixed and final that the legislature is powerless to enact a subsequent statute authorizing the court to reopen the question and increase or reduce the amount of future alimony as the changed circumstances may require?

The present case is one of first impression in Virginia. We have great respect for the courts which have held a final decree for alimony a vested property right, but we prefer to take a contrary view in Virginia and to hold that a final decree for future alimony is not a vested property right.

It is not necessary here to set out in great detail the nature and history of alimony. For an exhaustive treatment of this subject, see the opinion of Mr. Justice Epes in *Gloth* v. *Gloth*, 154 Va. 511, 153 S. E. 879, 71 A. L. R. 700. Alimony had its origin in the ecclesiastical courts of England. These courts had the power of awarding *a mensa* decrees, but absolute divorce was unknown to them, the jurisdiction to grant an absolute divorce resting solely in Parliament.

The ecclesiastical law of England became part of the common law of Virginia, which therefore embraced *a mensa* divorces and the power in the courts to grant alimony in conjunction with such divorces. The statutes authorizing the Virginia courts to grant *a mensa* divorces are thus declaratory of the common law. Divorces *a vinculo*, on the other

hand, came much later in Virginia, and are wholly creatures of statute law.

The word alimony comes from the Latin *alimonia*, "sustenance," and means, therefore, the sustenance or support of the wife by her divorced husband. It stems from the common-law right of the wife to support by her husband, which right, unless the wife by her own misconduct forfeits it, continues to exist even after they cease to live together. Alimony has as its sole object the support of the wife, and is not to be considered a property settlement upon a dissolution of the marriage. It may, however, take the form of either a lump-sum payment or the more usual periodic payments.

As is said in *Audubon* v. *Shufeldt*, 181 U. S. 575, 21 S. Ct. 735, 736, 45 L. Ed. 1009, 1010, "Permanent alimony is regarded rather as a portion of the husband's estate to which the wife is equitably entitled, than as strictly a debt; alimony from time to time may be regarded as a portion of his current income or earnings; * * * ." And in *Noyes* v. *Hubbard*, 64 Vt. 302, 23 A. 727, 728, 33 Am. St. Rep. 928, 15 L. R. A. 394, the court says, "Alimony is not a judgment for the enforcement of any contract, express or implied, existing between the parties thereto, but for the enforcement of a duty in the performance of which the public as well as the parties are interested." See also, *Capell* v. *Capell*, 164 Va. 45, 178 S. E. 894.

In order that the wife may not fail of this support which alimony is designed to afford her, the law has surrounded her with many safeguards. If her one-time husband does not make prompt payment, he may be imprisoned for contempt. Accrued alimony is also a lien on his real estate. *Isaacs* v. *Isaacs*, 117 Va. 730, 86 S. E. 105, L. R. A. 1916B, 648. Accrued alimony is not a provable debt in bankruptcy, nor is the husband relieved from any future payments by a discharge in bankruptcy. Once the money has passed into the wife's hands, her creditors may not reach it for the payment of any debts incurred prior to the divorce, and it is not considered income within the purview

of the income tax laws. 17 Am. Jur., *Divorce and Separation*, section 501.

The awarding of alimony is highly discretionary, and, if awarded at all, its amount will depend greatly upon the financial situation of the parties—the necessities of the wife and the resources of the husband. This court has held that a decree of alimony in an *a mensa* divorce may always be re-examined and altered, even where there is no reservation of such power in the decree. *Gloth* v. *Gloth, supra.* This power to modify is a power inhering in the courts.

We have held, however, that, since alimony awarded in an *a vinculo* decree is strictly a creature of statute, no power inheres in the courts to modify such a decree, and the decree is incapable of modification unless this power is specifically reserved to the court in the decree. *Brinn* v. *Brinn, supra.*

The legislature saw fit to liberalize section 5111 in 1934, Acts 1934, ch. 329, by providing that the courts might thereafter alter and modify any decree of alimony. It was no doubt apparent to the legislature that, regardless of the proceeding in which it is granted, the purpose of alimony is always the same—the support by the husband of his former wife as she may require and as he can afford—and it was their intent to remedy the anomalous situation whereby alimony in an *a mensa* decree might be adjusted according to the equities of the situation, but that awarded in an *a vinculo* decree was immutable.

We held, however, in *Golderos* v. *Golderos, supra,* that the statute as thus amended in 1934 should not operate retrospectively, but should apply only to alimony awarded after the amendment. This was in line with the constitutional canon that a statute will be construed in such a manner as to avoid a constitutional question wherever this is possible.

It will be observed that at this point alimony in an *a vinculo* decree was on precisely the same footing as that in an *a mensa* decree with one exception: if the *a vinculo* decree awarding alimony was entered prior to the amendment of 1934, it could not be altered unless a provision for altera-

tion was included in the decree. It should be borne in mind that the pertinent statutes have never differentiated between the two types of alimony, although our courts have regularly decided that the one was susceptible to change and the other immutable.

In 1938, the legislature further amended section 5111 so as to allow modification of an alimony decree "whether the same has been heretofore or hereafter awarded." The effect of this amendment was to wipe out the last remaining difference between *a mensa* and *a vinculo* alimony, and to clothe the courts with the power to modify any decree of alimony upon proof by either party that such change is reasonable and fair. It is this action of the legislature which is now attacked as unconstitutional.

■■■ The material thing which is supplanted by alimony is simply the right of the wife during coverture to support and maintenance by the husband in accordance with her needs and his ability to provide, in the light of their station in life. The right of the wife during coverture to support and maintenance is not a property right. It is one of those things which cannot be accurately defined. None of the attributes of property attaches to it. It cannot be sold or otherwise transferred. It is not susceptible of inheritance or disposition by will. It is not an asset in bankruptcy nor is it subject to execution or attachment. It is not taxed as income. It is uncertain in duration, lasting possibly a day, a month, or a year or more. It ceases entirely upon the death of either husband or wife. So much for the wife's right of support during coverture.

What happens to this right of support when the marriage is dissolved by a final divorce decree? As an incident to the divorce the court substitutes for this support what is termed alimony. This right to alimony, just as the prior right of the wife to support, lacks the essential elements of property. The future periodic payments may not be attached or otherwise levied upon. They cannot be assigned or transferred by inheritance or will. They are uncertain in duration and cease upon the death of either party. The

decree for divorce and the awarding of alimony as a substitute for the wife's former right to support does not change the character and nature of the obligation. The decree certainly does not raise the obligation in dignity. It is no greater after the decree than it was before. Notwithstanding the fact that alimony has been reduced to judgment, its original character is never merged into the judgment and can always be shown.

It would indeed be entirely inequitable to require a man to continue paying alimony to a former wife if she then is not in need of support and he has become a pauper since the final decree for alimony. She may have been remarried to a man who is abundantly able to support her, or her estate may have been tremendously augmented by an inheritance while the fortunes of the former husband have vanished, leaving him a subject of charity. Conversely, it would be equally inequitable to refuse an increased allowance to a former wife who was partially capable of supporting herself at the time of the decree for alimony but afterwards became a helpless invalid. The original allowance may have been very small, by reason of the ability of the wife to help herself and the inability of the man to pay more. Subsequently the former husband, through good fortune achieved by inheritance or by his own efforts, may have acquired an income of several thousand dollars per month, making him a man of substantial means. His former wife, now an invalid, should not remain an object of uncertain charity, and the equity court should not be prohibited by a final decree for alimony from giving her equitable relief. The right to support and maintenance or alimony is such a varying thing that its ascertainment never should be absolutely final as to future instalments. Absolute inflexibility ought not to obtain.

These considerations must have been in the minds of the members of the General Assembly when they conferred upon the courts, by the amendment of 1938 to Code, section 5111, the power to reopen the question of alimony, even

though it had been fixed by a final decree, and to readjust future unaccrued periodic payments.

▮▮▮ Our conclusion is that alimony to accrue in future monthly instalments, though fixed by a final decree, is not a vested property right; therefore the legislature had the power to enact the amendment of 1938 authorizing the courts to increase, decrease, or cause to cease altogether any alimony "that may thereafter accrue, whether the same has been heretofore or hereafter awarded."

The cause is remanded to the lower court for a hearing upon the propriety of reducing the alimony payments.

*Reversed and remanded.*

HOLT, J., dissenting.

It is evident from the excellent opinion Judge Gregory has written that he gave the case very careful study. Incidentally, however, the last sentence of the second paragraph, "Thus the decree for the alimony became a finality," would seem an inappropriate form of expression in view of the decision ultimately arrived at.

## I.

Despite the cogency of much of the reasoning in the opinion, it seems to me to lack convincing force as regards the pivotal question in the case. In the last analysis, I take it that that question is, Did the decree of July 25, 1929, confer upon the wife a vested property interest in the alimony thereby awarded her? If it did, then the amendment of 1938 to section 5111 of the Code is unconstitutional and void so far as that decree is concerned. If it did not, then it was competent to the General Assembly, by that amendment, to authorize the court to modify the award or even to abrogate it entirely.

The weight of authority, on which side is the well-reasoned *Livingston Case, supra,* 173 N. Y. 377, 66 N. E. 123, 93 Am. St. Rep. 600, 61 L. R. A. 800, it seems to me

represents the sound view. That case holds that an award of permanent alimony confers upon the wife a vested right of property where, as in that case and in this one, the decree contains no reservation of jurisdiction and no statute exists giving the court power thereafter to reopen the case and modify the award.

In the present opinion that doctrine is rejected, the sweeping statement being made concerning alimony that "None of the attributes of property attaches to it." And that broad generalization is followed by certain specific averments touching alimony, such as that it cannot be sold or otherwise transferred, that it is not subject to execution or attachment, etc. But, conceding that alimony is inalienable; that it is not transmissible by inheritance nor bequeathable by will; that it is not treated as an asset in bankruptcy proceedings; that it is not subject to execution or attachment; and that it is not taxed as income of the wife—no one of those things, nor do all of them combined, alter the sober and irrefragable fact that as to the wife it is property, and property of the most real sort, indeed her very living in most cases. And it is its nature and function as regards the wife herself that is the sole point for consideration in this connection; and, as I view the question, the relationship of the decreed alimony to her economic welfare, and its significance in that respect, are all-sufficient reasons for treating it as property.

Moreover, the absence of certain attributes and amenabilities commonly associated with the idea of property is by no means peculiar to alimony. There are many other instances known to the law where property—admittedly such —is held and enjoyed by a person without the power of disposing of it. Besides, certain things are treated as not being assets in bankruptcy proceedings, and certain others are made exempt from execution, attachment and taxes, not because they are not property, but for the very reason that they are property in an emphatically real and essential sense as respects the owner.

Furthermore, it seems to me that this view of the matter is much more in line with the attitude and course the court heretofore has taken concerning alimony decrees, as indicated by such well-considered opinions as those in *Brinn* v. *Brinn,* 147 Va. 277, 137 S. E. 503, and *Golderos* v. *Golderos,* 169 Va. 496, 194 S. E. 706, than is the present decision.

## II.

There is another reason, I think, why the decree of July 25, 1929, should be held an inviolable finality.

The original decree already having been modified twice by the trial court, it appears that when the one of July 25, 1929, was entered the defendant expressly requested that it include a reservation of jurisdiction. This request the chancellor declined to grant. The defendant then petitioned the Court of Appeals to review and reverse the decree, partly on the ground that the trial court had refused to grant jurisdiction. The petition for appeal was denied. Thus it would seem that if it be possible for the courts of this State ever to give to their decrees the quality of finality it was done in this instance.

And having exhausted their power to make the decree of July 25, 1929, absolutely final, it would appear that the General Assembly was without the constitutional power even to *authorize* the court to modify it. This because the rights of the beneficiary of the decree had become fixed, and upon the ground that such action on the part of the legislative branch of the government would be an unconstitutional invasion of the judicial branch. In *Ratcliffe* v. *Anderson,* 31 Gratt. (72 Va.) 105, 31 Am. Rep. 716, the court, in an opinion by Judge Christian, said:

"Both upon principle and authority I conclude that the legislature has no right, directly or indirectly, to annul in whole or in part a judgment or decree of a court already rendered, or to authorize the courts to reopen and rehear judgments and decrees already final, by which the rights of the parties are finally adjudicated, fixed and vested; and

that every such attempt of legislative action is plainly an invasion of judicial power and therefore unconstitutional and void."

With non-essentials wiped away, the issue in this cause simmers down to this: Was the decree of July 26, 1929, a final decree or was it not a final decree? If it was a final decree, it can not at this late date be set aside; if it was not, then there has never been a final decree in any suit for divorce with alimony, though the record be stricken from the docket, and filed among ended causes.

To this last proposition I can not assent and so must dissent.