In re the MARRIAGE OF Juliane R. OHR, Petitioner and Cross–Appellee,

and

Gerry Ohr, Appellee and Cross–Appellant,

and

Concerning Roger Bruch, Intervenor–Appellant and Cross–Appellee.

No. 03CA0726.

Colorado Court of Appeals, Div. V.

July 1, 2004.

Jacqueline St. Joan, Denver, Colorado, for Petitioner and Cross–Appellee and Intervenor–Appellant and Cross–Appellee.

Gutterman Griffiths & Powell, PC, Marie Avery Moses, Lone Tree, Colorado, for Appellee and Cross–Appellant.

Opinion by Judge DAILEY.

Juliane R. Ohr (wife) and Roger Bruch (intervenor) appeal from the judgment determining that Gerry Ohr (husband) is the legal father of the child born during husband's marriage to wife. Husband cross-appeals from that part of the judgment allocating parenting time to intervenor. We affirm in part, reverse in part, and remand for correction of the judgment.

Husband and wife had been married for twenty-two years when wife filed a petition for dissolution of marriage. The child had been conceived and born approximately three years before wife filed for dissolution of the marriage. Two months after the petition for dissolution was filed, intervenor filed a petition to establish his paternity based on the results of genetic testing, which showed more than a ninety-nine percent probability that he was the father of the child. The dissolution and paternity actions were consolidated.

After a three-day hearing, the trial court found that husband enjoyed the presumption of legitimacy because the child was born during the marriage and the parties held her out as their child. The court also found that intervenor enjoyed the presumption of being the biological father as a result of the genetic testing. The court further found that all the adults knew or should have known that the child was intervenor's biological child prior to her birth in June 1999. Nevertheless, husband received the child into the family as his

own, and intervenor did not assert parentage until May 2002.

The court also found that husband exercised parental involvement in the child's life for thirty-three of the initial months of her life. In contrast, intervenor had only limited casual contact once a week, but dramatically increased his involvement in the child's life during the eleven months prior to the hearing.

The court considered the parties' values, time commitments, and parenting skills. It concluded that husband had good parenting skills and interaction with the child, while intervenor interacted poorly with her and was learning to be a parent. The court also noted that intervenor had a history of alcoholism, drug abuse, and spousal abuse that had persisted over his lifetime, and concluded that his prognosis was guarded. It found that intervenor's history, as well as his issues concerning anger management with children, could negatively affect the child.

The court further found that husband also had significant mental health problems, had been highly unstable since the separation, and alienated his older children, and there was credible evidence of spousal abuse. The court concluded, however, that husband's deficits were primarily related to the dissolution and that he had a better chance of recovery than intervenor. The court also found that the child was more attached to husband.

The trial court determined that husband was the child's legal father. However, the court also found that the child knew that she had two fathers and had internalized that information and, therefore, concluded that she needed to have long-term relationships with both husband and intervenor. Consequently, both husband and intervenor were granted separate supervised parenting time with the child, and all parties were ordered to participate in therapy.

## I. Wife's and Intervenor's Appeal

### A.

■ Wife and intervenor contend that, as a matter of law, husband's spousal abuse of

wife disqualified him from being named the child's legal father. We disagree.

■ Where paternity is raised during a dissolution of marriage action, the provisions of the Uniform Parentage Act (UPA), § 19–4–101, et seq., C.R.S.2003, must be applied. *In re Marriage of Burkey,* 689 P.2d 726, 727 (Colo.App.1984).

■ Under the UPA, the best interests of the child are determinative of paternity in cases involving, as here, two conflicting presumptions of paternity. *N.A.H. v. S.L.S.,* 9 P.3d 354, 364–65 (Colo.2000); *see also People in Interest of J.A.U. v. R.L.C.,* 47 P.3d 327, 334 (Colo.2002)("[A] legal finding of paternity entails more than simply an analysis of DNA test results. Instead . . . paternity determinations are made based on the best interests of the child." (citations omitted)).

■ One factor considered in determining the best interests of the child under the Uniform Dissolution of Marriage Act (UDMA) is the existence of credible evidence of spousal abuse. *See* § 14–10–124(1.5)(a)(X), C.R.S.2003 (denoting such as a factor to be considered in allocating parental responsibilities). This factor is not, however, necessarily determinative of the best interests of the child. *See In re Marriage of Bertsch,* 97 P.3d 219, 2004 WL 63459 (Colo. App. No. 02CA0888, Jan. 15, 2004).

Here, the trial court specifically found that there was credible evidence of spousal abuse by husband and that intervenor had a history of alcoholism, drug abuse, and domestic violence that had persisted over his lifetime. The court also found, however, that intervenor's issues concerning anger control arose in his dealing with the child and could negatively affect his ability to parent her.

Thus, the court explicitly considered the evidence of past spousal abuse by both presumed fathers in resolving the parentage issue in the best interests of the child. The weight to be given that evidence in light of the other factors in § 14–10–124(1.5)(a) was within the trial court's prerogative considering all the circumstances of the case. *See In re Marriage of Garst,* 955 P.2d 1056, 1061 (Colo.App.1998).

While intervenor asserts that the court ignored evidence that he and mother could cooperate better, there was evidence presented that mother was unsure of the long-term nature of her relationship with intervenor.

Accordingly, we are satisfied that the trial court adequately considered the evidence of spousal abuse as well as the other evidence concerning the child's best interests.

### B.

Wife and intervenor also assert that the trial court erred in determining paternity by making certain findings that were not supported by the record. We disagree.

■ The trial court may believe all, part, or none of a witness's testimony, even if uncontroverted. *In re Marriage of Bowles*, 916 P.2d 615, 617 (Colo.App.1995). Further, in determining a child's best interests in a custody proceeding, the trial court may consider the child's psychological attachment to potential caregivers and the potential harm the child may sustain if the attachment is severed. *People in Interest of E.C.*, 47 P.3d 707, 710 (Colo.App.2002).

Here, wife and intervenor concede that the contested findings were supported by the evaluator's report, which was adopted by the court in its discretion. We conclude the findings were sufficiently specific. And to the extent that the evidence could have supported different conclusions, we, as an appellate court, may not substitute our judgment for that of the trial court. *See In re Marriage of McCaulley–Elfert*, 70 P.3d 590, 593 (Colo.App.2003).

### II. Husband's Cross–Appeal
### A.

■ Husband asserts that the trial court erred as a matter of law in awarding intervenor parenting time. Intervenor argues, however, that, as one of two presumptive fathers, he was eligible to exercise parenting time with the child. We agree with husband.

Intervenor's argument fails because (1) when the trial court determined paternity, his status became that of a nonparent; (2) a nonparent, even a biological father, has no constitutional right to parenting time; and (3) the General Assembly has not afforded such a right to persons in intervenor's position.

Intervenor's status as a presumptive father was extinguished when the court determined that, for all legal purposes, husband was the child's father. "[A] child can have only one legal father," and the purpose of a paternity hearing is to "determine[] who a child's legal father will be, and therefore, who will enjoy the rights and responsibilities of legal fatherhood," including "the right to parenting time; the right to direct the child's activities; the right to make decisions regarding the control, education, and health of the child," as well as the "obligation of support and the obligation to teach moral standards, religious beliefs, and good citizenship." *N.A.H. v. S.L.S., supra*, 9 P.3d at 357, 359 (footnote omitted).

■ The United States Supreme Court has recognized that, once legal fatherhood has been determined to reside elsewhere, a biological father has no constitutional right of visitation or association with a child; for all intents and purposes, the biological father is then a nonparent. *See Michael H. v. Gerald D.*, 491 U.S. 110, 124, 109 S.Ct. 2333, 2342, 105 L.Ed.2d 91 (1989) (rejecting, as unsupported by history or the traditions of this country, any claim that a state must support multiple fatherhood or privileges in connection therewith).

A state may, for policy reasons, choose to extend visitation (or what is known in Colorado as "parenting time," *see* § 14–10–103(3), C.R.S.2003) rights to nonparents. Yet, "[t]he extension of statutory rights in this area to persons other than a child's parents ... comes with an obvious cost. For example, the State's recognition of an independent third-party interest in a child can place a substantial burden on the traditional parent-child relationship." *Troxel v. Granville*, 530 U.S. 57, 64, 120 S.Ct. 2054, 2059, 147 L.Ed.2d 49 (2000).

In Colorado, §§ 14–10–123.3 and 19–1–117, C.R.S.2003, provide for grandparent visitation rights and parental responsibilities in certain circumstances; and § 14–10–123(1),

C.R.S.2003, permits certain other types of nonparents to obtain parental responsibilities and parenting time. *See In re Marriage of Dureno,* 854 P.2d 1352, 1357 (Colo.App.1992). However, § 14–10–123 does not give standing to a person on the basis that he is a presumptive father under the UPA, and intervenor does not argue that he otherwise fits within that provision. *Cf. People in the Interest of E.L.M.C.,* —— P.3d ——, 2004 WL 1469410 (Colo.App. No. 03CA1121, July 1, 2004)(nonparent, who qualified under § 14–10–123(1)(c) as a psychological parent, could seek parental responsibilities).

Under the UPA itself, during the pretrial proceedings, *"[a]ny party"* to a paternity proceeding may "seek *temporary* orders as to the allocation of parental responsibilities." Section 19–4–111(4), C.R.S.2003 (emphasis added). However, under § 19–4–116(3)(a), C.R.S.2003, a *permanent* judgment or order "concerning the duty of support, the recovery of child support debt, ... parenting time privileges with the child, ... or any other matter in the best interest of the child" is directed against only *"the appropriate party"* to the proceeding" (emphasis added).

Section 19–4–116(3)(a) does not define the "appropriate party." In construing the language of a statute, we accord words their plain and ordinary meaning, and we view the words in the context in which they are used. *See Univ. of Colo. v. Indus. Claim Appeals Office,* 74 P.3d 510, 512 (Colo.App.2003).

"Appropriate" is defined as "specially suitable: fit, proper; ... belonging peculiarly: special." *Webster's Third New International Dictionary* 106 (1986). Read in context, the phrase "appropriate party" means one specially suited to exercise the parental privileges and responsibilities with which the permanent order is concerned. Ordinarily under the UPA, the person specially suited to fill the prescribed role is clearly the legal parent of the child. *See N.A.H. v. S.L.S., supra.* However, inasmuch as the UPA incorporates use of the criteria of the UDMA in determining parenting time, *see* § 19–4–111(4), we conclude that a person who is determined to be a nonparent under the UPA, but who fits the criteria in § 14–10–123(1) of the UDMA, may qualify as an "ap-

propriate party" within the meaning of § 19–4–116 of the UPA. *See Martinez v. People,* 69 P.3d 1029, 1033 (Colo.2003)(absent clear intent to the contrary, statutes that deal with the similar subjects should be construed harmoniously).

Here, because intervenor is neither a legal parent, nor a qualifying nonparent under § 14–10–123(1), he does not have standing to seek parenting time. *Cf. People in Interest of M.M.,* 726 P.2d 1108, 1124–25 (Colo.1986)(natural parent could be granted no visitation rights after his or her parental rights had been terminated and the child had been adopted by others).

Nor are we willing to recognize a common law parenting time right in a person who, although originally qualifying as a presumptive parent, was ultimately determined not to be the parent of a child. Because of the significant interests and policy considerations at stake on both sides of the issue, we think it best to leave to the General Assembly the decision whether to extend eligibility to seek parenting time in the manner urged here. *See generally, In re Visitation of C.B.L.,* 309 Ill.App.3d 888, 895, 243 Ill.Dec. 284, 723 N.E.2d 316, 321 (1999); *In re Hood,* 252 Kan. 689, 692, 847 P.2d 1300, 1303 (1993).

In so concluding, we necessarily reject intervenor's argument that the best interests of the child warranted the award of parenting time. Only if a nonparent first establishes the requisite standing to seek such relief may the court consider the best interests of the child. *See In re Marriage of Dureno, supra,* 854 P.2d at 1357; *cf. In re Custody of A.D.C.,* 969 P.2d 708, 710 (Colo.App.1998)(custody issue).

Accordingly, under the circumstances of this case, the trial court erred in awarding parenting time to intervenor, and thus that portion of the judgment cannot stand.

### B.

Husband asserts, wife and intervenor concede, and we agree, that the trial court erred in delegating the decisions concerning the duration of supervised visits and commencement of unsupervised parenting time to the therapist and guardian ad litem. *See In re*

359

*Marriage of McNamara,* 962 P.2d 330, 334–35 (Colo.App.1998); *see also In re Marriage of Elmer,* 936 P.2d 617, 621 (Colo.App.1997). Consequently, the trial court is instructed on remand to delete from its judgment the language so delegating those determinations.

The portion of the judgment determining that husband is the child's legal father is affirmed, the portion awarding intervenor parenting time is reversed, and the matter is remanded to the trial court for correction of the judgment consistent with the views set forth herein.

Judge VOGT and Judge STERNBERG * concur.