Argued and submitted April 20, reversed and remanded for reconsideration November 15, 1995, petition for review denied March 6, 1996 (322 Or 644)

In the Matter of the Marriage of

James W. SHOFNER,
*Respondent,*

*and*

Georgia Hendricks SHOFNER,
*Respondent,*

*and*

Bruce RAZE,
*Intervenor-Appellant.*

(87-6-349; CA A83809)

905 P2c 268

Mark A. Johnson argued the cause for intervenor-appellant. With him on the briefs was Findling & Johnson.

Deanne L. Darling argued the cause for respondents. With her on the brief were Hutchison, Hammond, Walsh, Herndon, Darling & Goss, and Ira L. Gottlieb and Keller, Gottlieb & Gorin.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Appellant (stepfather) seeks review of the trial court's dismissal of his motion to modify petitioners' (mother and father's) dissolution judgment to allow him visitation with his stepchild. We reverse and remand.

Father and mother's marriage was dissolved in July 1987. They were awarded joint custody of child. Mother was given physical custody, and father was given specified visitation. In December 1987, mother married stepfather. Child, who was five years old at that time, lived with mother and stepfather in Milwaukie. During this marriage, stepfather developed a very close relationship with child. They participated in sports and school activities together. Child's father also remained involved in child's life. All of the parties have had a good relationship with child and appear to have worked cooperatively together to parent child before this dispute arose.

Mother and stepfather separated in 1993, and a dissolution proceeding was ongoing at the time that stepfather initiated this proceeding. After the separation, mother moved to Vancouver, Washington. She removed child from the soccer team that stepfather coached and allowed him to visit child only on a limited basis, often on short notice. Stepfather asked mother and father for a set visitation schedule, but they would not agree to that. Child testified that he would like to continue his relationship with stepfather.

Stepfather intervened in mother and father's prior dissolution proceeding and, pursuant to ORS 109.119, sought specified visitation rights with child.[1] At the close of stepfather's case, mother and father moved to dismiss and the trial court granted the motion. The trial court explained that it allowed the motion based on its conclusion that, under the Supreme Court's decision in *Hruby and Hruby*, 304 Or 500, 748 P2d 57 (1987), the court lacked authority to award visitation to stepfather:

"If I were interpreting this statute alone without benefit of the *Hruby* case, I would tend to agree with [stepfather's

[1] It is not disputed that stepfather has established a "parent-child relationship" with child under ORS 109.119(4). Further, stepfather's intervention in the dissolution proceeding is not challenged.

counsel] that the best interest of the child's standard [*sic*] is to be the standard the Court would apply. Then I would certainly be denying the motion to dismiss and we would proceed upon the merits as to what form of visitation that [stepfather] should receive.

"However the *Hruby* case I think is too central to this issue to ignore. * * *

"I find though that I'm unable to distinguish *Hruby* in its application to this case, even though this case deals with visitation and not just custody. I believe that the *Hruby* case in order to establish visitation on the part of stepfather requires compelling circumstances to do so and those compelling circumstances have not been produced by the evidence in this case.

"Accordingly I conclude that I lack the authority under [ORS 109.119] as interpreted by Hruby to afford [stepfather] the visitation right that he seeks to have established in the modification of the decree.

"I hope you heard from my comments that I believe that a continued healthy contact with [stepfather] is in [child's] best interest, but I am not, I cannot find as a matter of law that I can grant him that relief in a modification proceeding."

The pertinent statute governing these proceedings is ORS 109.119, which provides:

"(1)   Any person including but not limited to a related or nonrelated foster parent, stepparent, grandparent or relative by blood or marriage who has established emotional ties, creating a child-parent relationship with a child may petition or file a motion for intervention with the court having jurisdiction over the custody, placement, guardianship or wardship of that child, or if no such proceedings are pending, may petition the court for the county in which the minor child resides for an order providing for custody or placement of the child or visitation rights or other generally recognized rights of a parent or person in loco parentis. If the court determines that custody, guardianship, right of visitation, or other generally recognized right of a parent or person in loco parentis, is appropriate in the case, the court shall grant such custody, guardianship, right of visitation or other right to the person having the child-parent relationship, if to do so is in the best interest of the child. The court may determine temporary custody of the child under this section pending a final order.

"(2)  In addition to the rights granted under subsection (1) of this section, a stepparent with a child-parent relationship, as defined in subsection (4) of this section, who is a party in a dissolution proceeding may petition the court having jurisdiction for custody or visitation or may petition the court for the county in which the minor child resides for adoption of the child. The stepparent may also file for post decree modification of a decree relating to child custody.

"(3)  A motion for intervention may be denied or a petition may be dismissed on the motion of any party or on the court's own motion if the petition does not state a prima facie case of emotional ties creating a child-parent relationship or does not allege facts that the intervention is in the best interests of the child.

"(4)  As used in this section 'child-parent relationship' means a relationship that exists or did exist, in whole or in part, within the six months preceding the filing of an action under this section, and in which relationship a person having physical custody of a child or residing in the same household as the child supplied, or otherwise made available to the child, food, clothing, shelter and incidental necessaries and provided the child with necessary care, education and discipline, and which relationship continued on a day-to-day basis, through interaction, companionship, interplay and mutuality, that fulfilled the child's psychological needs for a parent as well as the child's physical needs. However, a relationship between a child and a person who is the nonrelated foster parent of the child is not a child-parent relationship under this section unless the relationship continued over a period exceeding 18 months.

"(5)  Notwithstanding subsection (1) of this section, a person who has maintained an ongoing personal relationship with substantial continuity for at least one year, through interaction, companionship, interplay and mutuality may petition the court having jurisdiction over the custody, placement, guardianship or wardship of that child, or if no such proceedings are pending, may petition the court for the county in which the minor child resides, for an order providing for reasonable visitation rights. If the court determines from clear and convincing evidence that visitation is in the best interests of the child and is otherwise appropriate in the case, the court shall grant visitation to the person, having the relationship described in this subsection."

■    Stepfather asserts a number of grounds for overturning the trial court's dismissal of his motion. First, he contends that the court's holding in *Hruby* is not controlling here, because that case involved the application of the statute to a *custody* dispute between a parent and a nonparent, which is significantly different than this case involving a dispute over *visitation* between a parent and a nonparent.

We agree with stepfather that *Hruby* is not controlling here. In *Hruby*, the child's aunt, who had cared for the child almost all of her life, was in a custody dispute with the child's father. The aunt asserted that ORS 109.119 gave her a substantive custodial right to the child and, because of that, the sole consideration by the court in deciding the custody issue should be the best interests of the child. The Supreme Court concluded that, although the statute gave standing to certain persons to intervene in proceedings relating to a child's custody, the statute did not alter the substantive custodial rights of parents and nonparents. The court then looked to "principles of equity and common law" and held that a natural parent has the right to custody of a child absent a compelling reason for placing the child in the custody of another. The court went on in *Hruby* to conclude that there was no compelling reason not to award custody to the father.

*Hruby* is not controlling here, because that case concerned the court's interpretation of the statutes and case law as they relate to custody disputes between a parent and a nonparent. The issue here is visitation. Mother and father contend that "visitation is an incident of custody; in fact, a limitation on custody;" and that, consequently, the same standard has been and should be applied with respect to custody and visitation issues. Accordingly, they assert that, under the standard established in *Hruby*, stepfather may not be awarded visitation absent compelling reasons to do so.

Custody and visitation, however, are not the same. They are treated differently in the statutes and have been considered distinct concepts involving different considerations in our case law. In *Ortiz and Ortiz*, 310 Or 644, 801 P2d 767 (1990), the Supreme Court discussed the two concepts in deciding whether a visitation order was the equivalent of a custody order for purposes of establishing the appropriate time frame for a change of circumstances. The court stated:

"Thus, in the context of divorced persons, 'custody,' is the legal relationship between a minor child and the legal custodian, *i.e.*, the person to whom the court has given the *primary* rights and responsibilities to supervise, care for, and educate the child; usually that is the person with whom the child lives most of the time. In contrast, 'visitation' is the legal relationship between a minor child, the legal custodian, and a noncustodial person, *i.e.*, a person who has an interest in seeing and/or being with the child.

"*Because the considerations in a custody determination are much broader than a determination of visitation rights,* a visitation order is not analogous to a custody order." *Id.* at 649-50 (emphasis supplied; footnote omitted).

We conclude that the considerations in a visitation and custody dispute often are different and that the "compelling reasons" standard applied in *Hruby* to custody disputes between a parent and a nonparent is not necessarily applicable in a visitation dispute.

■ The question that we must resolve here is what standards we do apply in a dispute concerning visitation between a parent and a nonparent. We look first to the text and context of ORS 109.119 to determine if the statute provides the applicable standard. As discussed above, the Supreme Court concluded that with respect to custody, ORS 109.119 confers standing to a nonparent to intervene in various proceedings relating to custody, but that it does not grant a nonparent substantive rights with respect to custody, nor does it establish the applicable standards for the court to consider in custody disputes. Similarly, the language of the statute regarding visitation does not grant substantive rights to a nonparent, nor does it clearly establish applicable standards relating to visitation.

The pertinent language of the statute, which, as the parties point out, was amended in 1987, provides:

"If the court determines that custody, guardianship, right of visitation, or other generally recognized right of a parent or person in loco parentis, *is appropriate in the case,* the court shall grant custody, guardianship, right of visitation or other right to the person having the child-parent relationship, *if to do so is in the best interest of the child.*" ORS 109.119(1). (Emphasis supplied.)

Stepfather argues that the language of the statute, as amended, does provide a substantive standard to apply in visitation disputes.[2] In stepfather's view, the statute now makes it clear that the best interests of the child should be the sole consideration in a dispute concerning visitation between a parent and a nonparent.

■ We are not persuaded, however, that the additional language affects the Supreme Court's holding in *Hruby* that ORS 109.119 is a procedural statute and that it is necessary to look to "principles of common law and equity" to determine the applicable substantive standards. The present language of the statute does not state that custody or visitation must be awarded in accordance with the best interests of the child. It states that if the court determines that "custody, guardianship, right of visitation, or other recognized right of a parent or a person in loco parentis *is appropriate*," the court shall award custody, visitation, etc., in accordance with the best interests of the child. (Emphasis supplied.) Thus, under the statutory language, a decision must be made if custody or visitation is "appropriate" before the best interests of the child are considered.

The Supreme Court appears to agree with our understanding of the amended statute. Although the amendment was made before its decision in *Hruby*, the court did not deem it necessary to interpret the amended statute. However, it appeared to be the court's view, which it expressed in *dictum*, that the change in the language was not intended as a substantive change. The court explained:

"ORS 109.119 was amended in 1987 by HB 3197. Amendments were requested by the Committee for Oregon Families, the organization that requested the 1985 enactment of ORS 109.119. In testimony before a House Judiciary subcommittee, Ms. Sherman, a member of the Committee for Oregon Families, described HB 3197 as 'clean-up' legislation that expanded the proceedings subject to intervention and that permitted courts to make temporary custody awards. Minutes, House Judiciary Committee, Subcommittee No. 3, March 17, 1987, p 6 & exhibit F. HB 3197 as originally

---

[2] Stepfather, in fact, argues that this amendment essentially overrules *Hruby* with respect to the applicable standards in custody disputes. However, it is unnecessary to decide that question here.

introduced, however, was amended during the legislative process to add the following sentence to ORS 109.119(1):

> " 'If the court determines that custody, guardianship, right of visitation, or other generally recognized right of a parent or person in loco parentis, *is appropriate in the case*, the court shall grant such custody, guardianship, right of visitation or other right to the person having the child-parent relationship, if to do so is in the best interest of the child.'

> "There is little mention of this amendment in the committee minutes and no mention of its effect on the custodial rights of natural parents. Although we have no occasion to decide its effect on the issue presented by this case, we note that the language used is at least in some respects wholly consistent with this court's previous decisions in child custody disputes between natural parents and others. In such disputes, it would never be proper to give custody to someone *other* than a natural parent, unless custody in the other person best served the child's interests. The ambiguity of the sentence lies in whether it would allow a court to deny custody to a natural parent if custody in another would best serve the child's interests. The answer turns on whether the language 'is appropriate in the case' calls for consideration of the custodial rights of natural parents." *Hruby*, 304 Or at 516 n 9 (emphasis supplied).

We conclude that under the present language of ORS 109.119(1), we must look to common law and principles of equity to determine the applicable standards with respect to visitation issues.

■    We have not precisely established the appropriate considerations in a dispute between a parent and nonparent regarding visitation. The Arizona Court of Appeals, however, has articulately explained such considerations:

> "As must often be true in cases concerning the custody of children, the opinions in the cited cases show a certain disregard for largely heuristic, academic rules in an effort to reconcile the best interest of the child and the favored status of natural parents. If there is a rule to be fairly drawn from those opinions, it is that stated in *Commonwealth ex rel. Williams v. Miller*, 254 Pa. Super. 227, 385 A.2d 992, 994 (1978):

> > " 'When seeking visitation, a third party must show reasons to overcome the parent's prima facie right to

uninterrupted custody. However, the reasons need not be so convincing as in a custody case. In a custody case, the third party must convince the court that it is in the child's best interest *to take custody* from a parent and award it to the third party. In a visitation case, the third party need only convince the court that it is in the child's best interest *to give some time* to the third party. As the amount of time requested moves the visit further from a visit and closer to custody, the reasons offered in support of the request must become correspondingly more convincing.' ([E]mphasis in original[.])

"With specific regard to stepparents, we construe the case to say that the showing of an *in loco parentis* relationship between child and stepparent, together with evidence that the best interest of the child will be served by allowing a partial continuance of that relationship, may provide sufficient reason to limit the presumptive right of the natural parent to uninterrupted custody. * * * We are confident that trial courts will not lightly infringe upon the favored rights of natural parents and that faithful service to the best interest of the child will preclude the granting of visitation rights to a series of successive stepparents." *Bryan v. Bryan,* 132 Ariz 353, 359, 645 P2d 1267 (1982).[3]

We agree with the Arizona court's statement of the appropriate standards. A person seeking visitation under ORS 109.119 need not show compelling reasons to grant visitation to a nonparent. Rather, the decision should be made based on the particular circumstances, taking into consideration parents' right to uninterrupted custody of their child, the nature and extent of the visitation sought and the best interests of the child.[4] For the reasons discussed above, we remand to the trial court to consider stepfather's request for visitation under the standards that we have discussed.

Stepfather also assigns error to the trial court's award of attorney fees to mother and father, arguing that the court lacked authority to award fees. Whatever the abstract

---

[3] We note that in *Finck v. O'Toole,* 179 Ariz 404, 880 P2d 624 (1994), the Arizona Supreme Court disapproved of *Bryan's* holding that the superior court had statutory authority to award visitation to a stepparent.

[4] Stepfather also argues that ORS 109.119(2) provides additional substantive rights to a stepparent. In view of our disposition, it is unnecessary to address that issue.

merits of that proposition, in view of our disposition of the case, it is unnecessary for us to decide that question.

Reversed and remanded for reconsideration; costs to appellant.