Argued and submitted September 18, reversed and remanded November 29, 1995

In the Matter of the Marriage of

John S. SORENSEN,
*Respondent,*

*and*

Sherri SORENSEN,
nka Sherri Ellers,
*Respondent,*

*and*

Ronda L. HAUN,
fka Ronda L. Sorensen,
*Appellant.*

(D8502-61563; CA A86723)

906 P2d 838

Charles D. Gazzola argued the cause and filed the brief for appellant.

No appearance for respondent John S. Sorensen.

No appearance for respondent Sherri Sorensen, nka Sherri Ellers.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

Stepmother seeks to intervene in a proceeding to determine custody and visitation for a 13-year-old child whom she helped raise during her marriage to the child's father. The court held that stepmother could appear pursuant to ORS 109.119(5), which provides that an intervenor may obtain an order providing for reasonable visitation rights if, based on clear and convincing evidence, the court determines that visitation with the intervenor is in the child's best interests and is otherwise appropriate in the case. However, the court denied stepmother the opportunity to intervene pursuant to ORS 109.119(1), which allows an intervenor to participate in a proceeding regarding custody. She appeals; we reverse and remand.

The following facts are undisputed. When the child was two years old, the marriage of her biological parents (father and mother) was dissolved, and each was awarded joint custody of the child. One month later, father married stepmother. That marriage lasted for 11 years. At the beginning of father and stepmother's marriage, the child spent half her time with mother and half her time with father and stepmother. However, when she turned six, the child began residing with father and stepmother and spending less time with mother. That arrangement continued for three years. Between the ages of 10 and 12, mother's involvement with the child diminished even further, with the child having few overnight visits with mother. Over the years, stepmother and the child have developed a very close relationship, with stepmother assuming a primary parenting role. Stepmother has been responsible for making the major decisions that affect the child and for assisting with her education. She has helped feed, clothe, shelter, discipline, obtain medical care and provide emotional support for the child. Still, the child has at all times referred to her biological mother as "mom" and continues to have a good relationship with her. Mother and father continue to share joint legal custody of the child.

After father and stepmother's recent divorce, the child continued to reside with father. Stepmother moved to a nearby residence to facilitate visitations with the child. She

and father had a verbal agreement[1] that the child would be allowed to spend an unlimited amount of time with stepmother, and that she would have the freedom to go back and forth between the households as she pleased. Stepmother alleges that within two months, father decided not to abide by that agreement and began making it difficult for stepmother to see the child. In an affidavit submitted in support of her motion for intervention, stepmother also states that father has a permanent "psychological disability" and that he has recently

> "taken some other steps, such that I do not believe it is in [the child's] best interest that Father have custody of her. My understanding is that Mother, despite her lack of involvement for the last several years, is potentially desirous of having [the child] come and live with her. It is my belief that based upon the relationship that [the child] and I had up to the time of the dissolution between Father and me, that I would be an appropriate custodial parent for [the child] or, in the alternative, should be entitled to intervene in the instant case, and I should be entitled to specific visitation with her."

At the hearing on stepmother's motion to intervene, the court heard testimony from mother, father and stepmother. The parties agreed that the goal of that hearing was to determine only whether stepmother should be granted intervenor status under ORS 109.119, which would allow her to initiate or intervene in a subsequent proceeding relating to the child's custody and/or visitation. The proceeding was not to decide whether stepmother should actually be awarded custody or specific visitation rights. Father did not oppose stepmother's motion to intervene. However, mother did oppose the motion, on the ground that stepmother could have sought to establish custody or visitation rights at the time of her divorce from father, ORS 109.119(2), but chose not to do so, and also on the ground that it was not in the child's best interests to have stepmother vying for custody "where we have two perfectly fine parents" who have successfully shared joint custody.

---

[1] Stepmother alleged that she and father had no written provisions regarding custody or visitation only because they feared that mother would intervene and seek sole custody of the child. Mother has since initiated such a proceeding.

The record shows that the parties lost sight of the limited purpose of the hearing and began presenting testimony that had no bearing on the question of whether an emotional child-parent relationship exists between stepmother and the child. Instead, witnesses were asked to comment on whether they thought stepmother should be allowed to seek an order requiring the child to live with or visit her. Mother and father each testified that, in their opinions, it would not be in the child's best interests for there to be "any type of disruption or interruption of her relationship with either" of them. There was testimony that in the last few months, mother and stepmother have disagreed over which of them should handle parental responsibilities such as talking to school counselors or calling doctors on the child's behalf. None of that evidence was relevant for the limited purpose of the hearing, but it seems to have had a persuasive effect on the trial court.

The statute at issue, ORS 109.119, provides, in part:

"(1) Any person including but not limited to a related or nonrelated foster parent, stepparent, grandparent or relative by blood or marriage *who has established emotional ties creating a child-parent relationship* with a child may petition or file a motion for intervention with the court * * * or if no such proceedings are pending, may petition the court * * * for an order providing for custody or placement of the child or visitation rights * * *. If the court determines that custody, guardianship, right of visitation, or other generally recognized right of a parent or person in loco parentis, is appropriate in the case, the court shall grant such custody, guardianship, right of visitation or other right to the person having the child-parent relationship, if to do so is in the best interest of the child. * * *

"(2) In addition to the rights granted under subsection (1) of this section, a stepparent *with a child-parent relationship*, as defined in subsection (4) of this section, who is a party in a dissolution proceeding may petition * * * for custody or visitation[.] * * *

"(3) A motion for intervention may be denied or a petition may be dismissed on the motion of any party or on the court's own motion *if the petition does not state a prima facie case of emotional ties creating a child-parent relationship or does not allege facts that the intervention is in the best interests of the child.*

"(4) As used in this section 'child-parent relationship' means a relationship that exists or did exist, in whole or in part, within the six months preceding the filing of an action under this section, and in which relationship a person having physical custody of a child or residing in the same household as the child supplied, or otherwise made available to the child, food, clothing, shelter and incidental necessaries and provided the child with necessary care, education and discipline, and which relationship continued on a day-to-day basis, through interaction, companionship, interplay and mutuality, that *fulfilled the child's psychological needs for a parent as well as the child's physical needs.* * * *

"(5) Notwithstanding subsection (1) of this section, a person who has maintained an ongoing personal relationship with substantial continuity for at least one year, through interaction, companionship, interplay and mutuality may petition the court having jurisdiction over the custody, placement, guardianship or wardship of that child, or if no such proceedings are pending, may petition the court * * * for an order providing for reasonable visitation rights. If the court determines from clear and convincing evidence that visitation is in the best interests of the child and is otherwise appropriate in the case, the court shall grant visitation to the person having the relationship described in this subsection." (Emphasis supplied.)

As noted above, the trial judge granted stepmother the right to seek visitation pursuant to subsection (5), but denied her the opportunity to intervene under subsection (1), which would have allowed her to seek custody as well as visitation. The court's ruling was based in part on its conclusion that, because stepmother has not proven that she is the psychological parent of the child *to the exclusion of* the child's biological mother (*i.e.,* because the child still considers her biological mother to be her "mom"), stepmother has not proven that she "fulfilled the child's psychological needs for a parent," ORS 109.119(4), and therefore has not proven the existence of a "child-parent relationship" under that subsection. The court's decision was also based on its conclusion that if a proposed intervenor plans to seeks a change in two biological parents' custodial arrangement, that is not "in the best interests of the child." ORS 109.119(3).

■     We hold that the trial court erred on both grounds. First, ORS 109.119(4) does not state or imply that a child's

"psychological needs for a parent" can be met by only two individuals. It was undisputed that stepmother has, for at least the last six years, fulfilled many of the child's psychological and physical needs for a parent. That fact is not diminished by mother's involvement in the child's life. There was evidence that stepmother had assumed a more active parenting role than even father, and it is possible that she actually "fulfilled the child's psychological needs for a parent" to a greater extent than did *either* of the child's biological parents. The existence of two biological parents who are fit and who successfully share joint custody does not have any bearing on whether *stepmother* has established a psychological "child-parent relationship" between herself and the child. Here, it was undisputed that she does have such a relationship, and the trial court erred in holding otherwise.

■      Second, the statute does not provide that, to obtain intervenor status, a stepparent must prove that she/he "substituted" for the biological parent.[2] Stepmother was not required to show that the child views *her*, and not mother, as the preeminent mother figure in the child's life. A psychological parent need not preempt a biological parent in order to establish the requisite child-parent relationship. The trial court erred in concluding that, because the child still has a relationship with her mother, calls her mother "mom" and knows that stepmother is not her biological mother, the child and stepmother did not have a psychological child-parent relationship as defined in subsection 4.

■■      Finally, we turn to the court's conclusion that stepmother was required but failed to establish that her intervention in a custody proceeding would be in the child's best interests. ORS 109.119(3) provides that a motion to intervene may be denied if it does not "allege facts that the intervention is in the best interests of the child." Here, the trial court interpreted that to mean that stepmother bears the burden of proving that the child would benefit from there being a third adult who could initiate or intervene in a future proceeding

---

[2] The trial court opined, "I would classify [stepmother] as a very important stepparent to [the child], but not a *substitute* parent, not the psychological parent * * * [because the child] knows and understands and always has [known] who her parents are and that they fulfill a very important parenting role for her[.]" (Emphasis supplied.)

and seek custody. The court indicated that it would not be in the best interests of a 13-year old girl for a court to "virtually decide her weekends for her," and it appeared to accept mother's argument that, under *Hruby and Hruby*, 304 Or 500, 748 P2d 57 (1987),[3] stepmother would not be awarded custody anyway. Those are not proper bases for denying stepmother standing to *participate* as an intervenor in a custody case.

First, the court got ahead of itself in deciding that the imposition of a custody or visitation order would not be in the best interests of a child who has previously enjoyed the freedom to decide for herself when and with whom she visits or lives. Instead of analyzing whether stepmother's appearance at a hearing to determine the child's custody and/or visitation would be in the best interests òf the child, due to their longstanding and close child-parent relationship, the court anticipated the negative effects of a *potential future order* which, if sought at all, would be the product of a subsequent proceeding. In so doing, the court confused the issues actually in controversy in *this* proceeding. *See State ex rel Juv. Dept. v. Lauffenberger*, 308 Or 159, 163, 777 P2d 954 (1989) ("ORS 109.119 provides only procedural rights to persons who claim the specified emotional relationship with the child; the statute does not establish or change substantive custodial rights."); *Hruby*, 304 Or at 515 (legislative history shows that intervention statute "was intended to allow the trial court to 'hear everyone' and to 'know all the facts'; it was not intended to go beyond that 'to make suggestions to the court' regarding what to do with that evidence").

Second, even if stepmother might not be able to overcome the preference that is given to a biological parent over an intervenor in a custody dispute, that possibility is not a proper basis for denying stepmother the right to appear *at all* in such a proceeding, especially in the light of stepmother's allegation that father suffers from a permanent psychological disability and that stepmother has reason to believe that, as

---

[3] *Hruby* held that, in custody disputes between natural parents and others, "courts will deprive natural parents of the custody of their children only in order to protect the children from some compelling threat to their present or future well-being." 304 Or at 509. We have recently held that the *Hruby* rule does not apply in visitation disputes. *Shofner and Shofner*, 137 Or App 543, 905 P2d 268 (1995).

between herself and *father*, she would be the better custodial parent. Significantly, father does not object to stepmother's intervention.

Third, the statute requires only that stepmother "allege facts" showing that her intervention would be in the child's best interests. She did so, and mother's only challenge to those allegations was based on a concern about the detrimental effect of a custody or visitation order. Again, that puts the cart before the horse. This was a proceeding to determine whether stepmother should be allowed to *intervene*, not whether she should be awarded custody or visitation. Although no stepparent has an "automatic" right to intervene, the evidence in this case established the existence of the requisite child-parent relationship between stepmother and the child, and stepmother's motion to intervene did "allege facts [that show] that the intervention is in the best interests of the child." ORS 109.119(3). The trial court erred in denying stepmother intervention status under ORS 109.119(1).

Reversed and remanded.