[650 NYS2d 691]

In the Matter of JENNIFER A., a Child Alleged to be Neglected. CATHOLIC HOME BUREAU, Appellant-Respondent; LAVERNE A., Respondent-Appellant.

First Department, December 10, 1996

APPEARANCES OF COUNSEL

*Frederick J. Magovern* of counsel *(Pamela Howard* on the brief; *Magovern & Sclafani,* attorneys), for appellant-respondent.

*Philip M. Genty* of counsel *(Nina Hong, Nicola Lemay* and *Kimberly Milligan* on the brief; *Morningside Heights Legal Services,* attorneys), for respondent-appellant.

*Betsy Kramer, Law Guardian,* for Jennifer A.

### OPINION OF THE COURT

NARDELLI, J.

It has been said that: "Age is not a matter of chronology but of physiology." The facts of this case illustrate this wise adage. There are *young* older people just as there are *old* younger people. The foster mother, Ms. A. herein, is one of the former.

Jennifer A., within days of her birth on April 21, 1991, was placed in the home of her current foster mother Marion A., under the supervision of the petitioner Catholic Home Bureau. The agency filed a petition in July 1994 pursuant to Social Services Law § 384-b, seeking to have custody and guardianship of Jennifer committed to the Commissioner of Social Services and Catholic Home Bureau for the purpose of her adoption by Marion A. After a fact-finding hearing, the Family Court found that the father had abandoned the child and that the respondent mother had permanently neglected her. At the following dispositional hearing, the foster mother, then 67 years old, testified that Jennifer had bonded with her, refers to her as "mommy" and has her own room. Ms. Marion A. asserted that she undergoes annual physical examinations and that her health was good and that she had no medical problems. She is active and takes Jennifer (and another foster child who lives with her) out every day. She escorts the girl to and from day care and brings her regularly to the park. While the court found that the respondent mother was not an appropriate "discharge resource", it also found that adoption by the foster mother would not be in the child's best interest because of the

foster mother's age and lack of possible backup resources. The court ordered the agency to work with the maternal aunt, Eva J., towards the eventual discharge and custody of the child to the maternal aunt.

Initially, we note that the Family Court's finding of permanent neglect against the mother was supported by the record since for more than one year the respondent failed to maintain regular contact with Jennifer and failed to plan for the child's future, despite the diligent efforts of the petitioner (Social Services Law § 384-b [7] [a]).

However, we find that it was an abuse of discretion and contrary to the best interests of the child for the Family Court to refuse to transfer custody and guardianship of Jennifer to petitioner so that the foster parent could adopt her, and, instead, to order Jennifer's discharge to the maternal aunt.

Ms. Ava J., the maternal aunt, testified she lived in Wisconsin with her daughter as well as with Jennifer's sister, Angela, and Jennifer's cousin, Dion. However, although Ms. J. learned that Jennifer was in foster care in 1993, she visited the child for the first time only after two years had passed and has seen Jennifer three times in total. Ms. J. conceded that she and Jennifer were almost strangers to each other. Pursuant to Family Court Act § 631, upon a finding of permanent neglect, the Court may dismiss the petition, suspend judgment, or commit the guardianship and custody of the child to the petitioner. The statute does not give the Family Court the discretion to fashion its own alternatives. It certainly does not give the court the power to award custody to a nonparty, even a biological relative who is a nonparty. A nonparent relative, such as the maternal aunt, takes no precedence over the proposed adoptive parent selected by an authorized agency. "Nor is any statutory or judicial precedent in this jurisdiction offered for the proposition that a fit member of an extended family takes precedence over adoptive parents selected by an agency to which has been transferred the natural parent's power to consent to an adoption" (*Matter of Peter L.*, 59 NY2d 513, 520).

The court's sole rationale for its action in awarding custody to the nonparty maternal aunt was the foster mother's age and lack of backup resources for Jennifer. The court's finding that Ms. A. had no backup resources was clearly erroneous. The court ignored the testimony of Ms. A. that her daughter and granddaughter loved Jennifer and would be willing to take care of the child if the need arose. Thus, the court asked Ms. A.: "Have you thought about if you were to adopt Jennifer,

who it is that would care for her if something were to happen to you?" and the foster mother answered: "My daughter and my granddaughter". She also testified that her daughter visited her and Jennifer at least once a month from her home in Maryland. Clearly, therefore, the foster mother *did* have backup resources in raising Jennifer.

Moreover, the other reason why the court rejected Ms. A. was because of her age. While age is *a* factor to be considered, it certainly is not the only or dispositive factor in the court's decision. As noted above, Ms. A. was, indeed, young at 67. She testified that she has an annual physical each year and does not have any physical problems, "[n]o heart problems, no high blood pressure". She is very active, as noted previously, taking the children, including Jennifer, out each day.

The law is clear that the age of the adoptive parent shall not be the dispositive factor in determining whether a child's best interests would be served by the adoption. "[T]he age of the prospective adoptive parents is one of a number of factors considered, but it is not decisive. There is no statutory requirement in the law, nor any criterion established in the decided cases respecting the disqualification to adopt on account of age" (*Matter of Michael D.*, 37 AD2d 78, 79). The Regulations of the New York State Department of Social Services specifically state: "Applicants accepted for adoption study shall be at least 18 years old. The agency shall not establish any other minimum or maximum age for study or acceptance" (18 NYCRR 421.16 [b]). As we have recently noted: "However, inasmuch as the record shows that the foster mother had provided an environment in which the child has lived and thrived for all but a few months of his life, the court erred in refusing to approve adoption by the foster mother based solely on her age of 67 and designating instead the back-up resource (*see, Matter of Infant S.*, 48 AD2d 425, 427)." (*Matter of Juan Andres R.*, 216 AD2d 145.)

Here, the Family Court ignored the fact that Jennifer has lived with Ms. A. since she was only a few days old and that the child not only calls her "mommy", but has bonded with her. The court also ignored the fact that the foster mother was in very good health and very active, with resources to fall back upon. In discriminating against the foster mother simply because of her chronological age, the court acted against the best interests of the child. It is difficult to perceive how Jennifer's best interests will be served by removing her from a home where she has known love and stability and sending her

to relatives who never even made any serious efforts to visit until the agency instituted the present proceeding.

Accordingly, the order of disposition of the Family Court, New York County (Sheldon M. Rand, J.), entered on or about October 31, 1995, which, *inter alia*, dismissed petitioner's application to terminate the mother's parental rights and directed the petitioner to work with the maternal aunt toward the eventual discharge and custody of the subject child to her, should be modified, on the law and facts, to the extent of granting the petition terminating the mother's parental rights and transferring custody and guardianship of the child to the Commissioner of Social Services and petitioner Catholic Home Bureau for the purpose of her adoption by her foster parent, and otherwise affirmed, without costs or disbursements. Order of the same court and Judge, entered on or about June 28, 1995, which found that respondent Laverne A. had permanently neglected the child, should be affirmed, without costs or disbursements.

MURPHY, P. J., SULLIVAN, RUBIN and ROSS, JJ., concur.

Order of disposition, Family Court, New York County, entered on or about June 28, 1995, affirmed, without costs or disbursements, and order of disposition, same court and Judge, entered on or about October 31, 1995, modified, on the law and facts, to the extent of granting the petition terminating the mother's parental rights and transferring custody and guardianship of the child to the Commissioner of Social Services and petitioner Catholic Home Bureau for the purpose of her adoption by her foster parent, and otherwise affirmed, without costs or disbursements.