■ In the Matter of NORMA McCLEMENT, Petitioner, v JOHN R. BEAUDOIN, as Commissioner of Social Services of Rensselaer County, et al., Respondents. [700 NYS2d 570] —Carpinello, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Rensselaer County) to review a determination of respondent Rensselaer County Commissioner of Social Services which denied petitioner's request to adopt her foster children.

In May 1997, petitioner and her husband, then 69 and 83 years old, respectively, requested to adopt their two foster children, siblings Stephanie and Robert, who had been placed in their care on April 14, 1995 at the ages of two and one, respectively, and had since been surrendered for adoption by their biological parents. Their application was given preference and first consideration since the children had been in their care for over 12 months (see, Social Services Law § 383 [3]).*

Following psychological evaluations of the children and information gathering from various service providers involved with the family, the request was denied by respondent Rensselaer County Department of Social Services (hereinafter respondent) on the ground that the best interests of the children, who had special needs, would be fostered by their placement in a home where both parents could provide structure and a "well defined situation where expectations and requirements for behavior are clear, predictable, patiently repeated and consistently consequated". Petitioner and her husband requested a hearing (see, Social Services Law § 372-e [4]), which was held before an Administrative Law Judge on April 9, 1998. Petitioner's husband did not attend because he was reportedly not feeling well and was having tests performed at the hospital. Notwithstanding their status as joint applicants, petitioner's counsel indicated that "his client [felt] it was in the best interest of these children to have this done today without adjourn-

---

* Petitioner seems to suggest that because their application was denied, respondent failed to meet the requirements of Social Services Law § 383 (3). The record reveals that the request by petitioner and her husband to adopt the children was indeed given preference and first consideration and, upon such consideration, was denied. To be sure, Social Services Law § 383 (3) does not guarantee that a foster parent's application to adopt will be accepted, nor does the denial of an application given first preference in any way ipso facto violate the statute.

ing it". Petitioner's husband apparently died that same day. By decision dated May 11, 1998, the Administrative Law Judge upheld respondent's determination. Petitioner then commenced this proceeding pursuant to CPLR article 78, which has been transferred to this Court (*see*, CPLR 7804 [g]).

There is no doubt that petitioner and her husband provided a loving environment for the children during the three years they lived with them. The children referred to them as "Grandma" and "Grandpa", and petitioner ensured that they were well fed, neatly groomed and generally cared for on a daily basis. Her husband gave them cookies, told them stories and was physically affectionate. Being loving, devoted foster parents, however, does not automatically translate into a right to become adoptive parents. Rather, regulatory guidelines must be followed (*see*, 18 NYCRR 421.15 [d], [g]; 421.16) and a foster parent's application for adoption can be rejected if they are not physically or emotionally capable of caring for the child or if approval of their application is not in the child's best interest (*see*, 18 NYCRR 421.15 [g] [2]).

More importantly, the standard of review this Court is obligated to apply is whether the determination is arbitrary and capricious or unsupported by substantial evidence (*see*, *Matter of O'Rourke v Kirby*, 54 NY2d 8, 12-13). Upon our review of the record, we find that it is neither arbitrary nor capricious and is supported by substantial evidence. To this end, we expressly reject petitioner's attack on the determination as being based solely on her age. While the age of petitioner and her husband was no doubt one factor considered—and permissibly so (*see, id.*; *see generally*, *Matter of Jennifer A.*, 225 AD2d 204, 207, *lv denied* 91 NY2d 809; *Matter of Juan Andres R.*, 216 AD2d 145; *Matter of Ward v Brookwood Child Care Orphan Asylum Socy.*, 78 AD2d 902, 903; *Matter of Infant S.*, 48 AD2d 425, 427)—it was not the sole factor.

Psychologist Joseph Bernier evaluated the cognitive and developmental functions of Robert and Stephanie at the ages four and five, respectively. He opined that both children have significant difficulties with self-control, self-regulation and working memory, that each demonstrated deficiencies in gross motor skills and that each showed early signs of attention deficit hyperactivity disorder. According to Bernier, Robert in particular needs to be "carefully monitored in terms of his developmental progress" and further needs long term care and intensive services because of the range of his deficits. Bernier recommended that both children would function best in a well-structured and well-defined setting where expectations and

requirements for behavior are clear, predictable and routine. Even petitioner's expert, a forensic psychologist who evaluated petitioner and her husband and found no psychological factors precluding them from parenting the children, opined that the children would "need caretakers who are willing and motivated to stay involved with extra-family service providers over the years".

On these points, the record reveals that petitioner's husband was not involved in the day-to-day child-rearing tasks of the children, let alone the more challenging tasks of guiding and nurturing their special needs. And, although petitioner claims that she alone is capable of providing a structured, well-defined environment for the children and would stay involved with their service providers, there is indication in the record to the contrary. She did not fully cooperate with daycare personnel in the toilet training of Robert at the age of four (not an insignificant developmental issue in the life of a toddler). She showed no concern about the children's behavior during an October 8, 1997 home visit—they were angrily fighting, each was hitting the other and Robert threw a tricycle at Stephanie. Respondent's caseworker had to twice intervene. She also demonstrated "inconsistent and strained" involvement with the community action program in which her teenage son had been placed following her filing of a person in need of supervision petition against him. It was further reported that petitioner lacked motivation to participate in family therapy with this son. Given this evidence—none of which pertains to the age of petitioner or her husband—substantial evidence supports the determination (*see, Matter of O'Rourke v Kirby, supra*).

Cardona, P. J., Mercure, Spain and Graffeo, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.