██ In the Matter of JOHN B. et al., Petitioners, v NIAGARA COUNTY DEPARTMENT OF SOCIAL SERVICES et al., Respondents. [735 NYS2d 333] —Determination unanimously annulled on the law without costs, amended petition granted and matter remitted to respondent Niagara County Department of Social Services for further proceedings in accordance with the following Memorandum: Petitioners commenced this CPLR article 78 proceeding to annul the determination following a fair hearing to remove a foster child, Georgina, from their home and allow her to be adopted by another party. Georgina was placed in foster care with petitioners when she was approximately 3 1/2 months old and has lived with them since that time. Her half-brother, Ralph, who has been diagnosed with multiple dis-

abilities, was placed with petitioners at the same time, when he was three years old. After the children were freed for adoption, respondent Niagara County Department of Social Services (DSS) informed petitioners that they would be allowed to adopt Georgina, and Ralph would be adopted by another party. Ralph was then removed from petitioners' home and placed in the pre-adoptive home of Patricia F., a special education teacher and single parent who already had an adopted son with special needs living in her home. Upon receiving an evaluation performed by Sarah Brandt, a certified social worker, at the urging of respondent New York State Office of Children and Family Services (OCFS), DSS reversed its decision and determined that the children should be adopted together. Rather than returning Ralph to petitioners, however, DSS determined that both children should be adopted by Patricia F.

Following a proceeding in Family Court, the court agreed with DSS that Patricia F. should be allowed to adopt both children. Petitioners appealed, and we modified the order by dismissing Patricia F.'s adoption petitions on the ground that there was insufficient proof in the record that DSS had executed the required consents to those petitions or had properly filed those consents with the clerk of the court. Our modification was subject to the rights of the parties to submit new adoption petitions and any rights that petitioners may have had to challenge administratively the removal of Georgina from their home (*Matter of Ralph,* 274 AD2d 965, 967).

Following our decision, which was published in July 2000, DSS pursued its course of action to allow Patricia F. to adopt both children and once again served petitioners with a notice that Georgina was to be removed from their home. Petitioners sought administrative review and requested a fair hearing, which commenced in September 2000 and was completed in November 2000. The Administrative Law Judge upheld the determination of DSS to remove Georgina from petitioners' home. In addition, DSS consented to the adoption of Ralph by Patricia F., and the adoption was completed on January 11, 2001. Subsequently, Patricia F. refused to permit petitioners to have further visitation with Ralph at their home.

The proper vehicle for foster parents to challenge the removal of a foster child from their home is to seek a fair hearing and, following an adverse determination, to commence a CPLR article 78 proceeding (*see, Matter of Alexandria Mary,* 227 AD2d 44, 47). When reviewing an agency's determination, a court does not conduct a de novo review of the best interests of the child, but rather, "the usual [CPLR] article 78 standards of

review are applicable" (*Matter of O'Rourke v Kirby,* 54 NY2d 8, 13; *see also, People ex rel. Ninesling v Nassau County Dept. of Social Servs.,* 46 NY2d 382, 386, *rearg denied* 46 NY2d 836; *Matter of McClement v Beaudoin,* 267 AD2d 932, 933). The best interests of the child are of great importance during the review process, however, because it is the agency's duty to act in the best interests of the child; "if [agencies] do not so act, their actions must be deemed 'arbitrary and capricious', or not based on 'substantial evidence' " (*Matter of O'Rourke v Kirby, supra,* at 15 n 2).

Public policy dictates that siblings and half-siblings should be placed and adopted together unless it would be contrary to the best interests of the children to do so (*see,* Social Services Law § 384-a [1-a]; 18 NYCRR 421.18 [d] [3]). One factor to consider when determining whether siblings and half-siblings may be adopted separately is "the attachment of the individual siblings to separate families/locations" (18 NYCRR 421.18 [d] [3] [v]). Social Services Law § 383 (3) provides that foster parents of a child who has been placed in their home for 12 months or longer are to be given "preference and first consideration" for adoption in the event that the child becomes eligible for adoption.

We agree with petitioners that the determination of DSS to remove Georgina from their home is arbitrary and capricious and not supported by substantial evidence. Georgina has lived with petitioners and their adopted daughter Sady since Georgina was an infant, and she has known no other home. Brandt, a certified social worker, and Dr. Becker-Weidman, who has a Ph.D. in human development, testified on behalf of respondents that Georgina would be capable of adjusting to Patricia F.'s home after a period of grief and that she would not develop a serious adjustment disorder. The Brandt evaluation, however, was completed in March 1999 and she admitted that she had no further contact with the parties and did not know their current situation. Dr. Becker-Weidman had never met Georgina or petitioners. Significantly, however, both testified that, although attachment between siblings can be strong, the strongest attachment of a young child is to her primary caregiver. Dr. Becker-Weidman further admitted that, if removed from the home of her primary caregiver, a young child would be expected to have a "normal grief reaction," including crying, aggressiveness, eating or sleep disturbances, nightmares or night terrors, as well as temporary regression in developmental skills. Roberta Miller, a certified social worker, who had interviewed Georgina and petitioners in June 1999

and one of the petitioners in November 2000, testified on behalf of petitioners that Georgina would suffer a "traumatic loss" if she were removed from petitioners' home because petitioner Janet B. has been Georgina's primary caretaker. She further opined that the trauma that Georgina would suffer if removed from petitioners' care would be greater than the trauma she would suffer if she did not live in the same home with Ralph, particularly because Ralph and Georgina could maintain a relationship with one another through visitation.

In our view, the finding of respondents that it was more important that Georgina and Ralph remain together than it was for Georgina to remain in the only home she has ever known is not supported by the record (*see, Matter of George L. v Commissioner of Fulton County Dept. of Social Servs.,* 194 AD2d 955, 956-957). Petitioners overcame the presumption that it is in the best interests of the children to live together by presenting evidence at the hearing concerning Georgina's strong attachment to petitioners. Finally, we once again express our disapproval of the failure of DSS "to act consistently with respect to the placement of these two foster children for adoption" (*Matter of Ralph, supra,* at 965). We therefore annul the determination to remove Georgina from petitioners' home, grant the amended petition, and remit the matter to DSS for further proceedings not inconsistent with this decision. (CPLR art 78 Proceeding Transferred by Order of Supreme Court, Niagara County, Lane, J.) Present—Pigott, Jr., P. J., Hayes, Scudder, Burns and Gorski, JJ.