The **PEOPLE** of the State of Colorado, Petitioner–Appellee, In the Interest of E.C. and A.C., Children,

and Concerning J.P.R. and N.R., Intervenors–Appellants.

No. 00CA1959.

Colorado Court of Appeals, Div. II.

Jan. 17, 2002.

Rehearing Denied Feb. 21, 2002.

Certiorari Denied June 10, 2002.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2001.

H. Lawrence Hoyt, County Attorney, Toni Jo Gray, Assistant County Attorney, Boulder, CO, for Petitioner–Appellee.

J.M. Stanlee West–Watt, Boulder, CO, for Intervenors–Appellants.

Opinion by Judge MARQUEZ.

In this post-termination of parental rights proceeding, J.P.R. and N.R. (paternal grandparents) appeal from an order denying their motion for permanent custody of their grandchildren, E.C. and A.C. We affirm.

The dependency or neglect proceeding was filed in December 1997, and the children were placed with their father in January 1998. The children were subsequently adjudicated dependent or neglected, and treatment plans were approved for the parents.

In September 1998, the children were placed in a foster-adopt home (foster home). Shortly thereafter, the maternal uncle sought to intervene, and in October 1998, the paternal grandparents, who lived in Texas, requested a home study so that the children could be placed with them.

The grandparents' home study was approved in March 1999. At that time, father was in compliance with his treatment plan, and the permanent plan for the children was

reunification with him. Accordingly, the children remained in their Colorado foster home.

In May 1999, E.C. made allegations of sexual abuse against father, father discontinued all contact with the children, and the permanent goal for the children became termination and adoption. In August 1999, the maternal uncle filed an objection to the motion to terminate, asserting that placement with him was a less drastic alternative. Although the grandparents supported the uncle's request for placement, they also filed a motion in August 1999 for custody pursuant to § 19-3-605, C.R.S.2001, to protect their rights in the event that the children were not placed with the uncle.

Following a hearing in December 1999, the trial court terminated the parents' rights. Thereafter, the grandparents and the foster parents were allowed to intervene, but the uncle withdrew his request for custody. In August 2000, following a contested hearing, the trial court found that continued placement with the foster parents was in the children's best interests and denied the grandparents' motion for custody.

### I.

■ The grandparents contend that the trial court erred in finding that the Department of Human Services acted properly. They argue that the Department ignored the statutory preference for a relative placement and unduly delayed permanent placement of the children, thus assuring that the children would attach to the foster parents. We find no error.

■ The Children's Code sets forth a preference for placement of a child with an available and appropriate grandparent *if* such placement is in the child's best interests. Sections 19-1-115(1), 19-3-605, C.R.S.2001. Although a trial court must consider a grandparent's request for placement, it is not required to grant the request. *In re Petitions of B.D.G.*, 881 P.2d 375 (Colo.App.1993).

The credibility of the witnesses and the sufficiency of the evidence, its probative effect and weight, as well as the inferences and conclusions to be drawn therefrom, are within the discretion of the trial court. Thus, a trial court's findings and conclusions will not

be disturbed on review if the record supports them. *People in Interest of C.A.K.*, 652 P.2d 603 (Colo.1982).

The record here reveals that from the time the petition in dependency or neglect was filed until shortly before the post-termination custody hearing, the goal was to reunite the children with their father or to place them with their maternal uncle, both of whom lived in Colorado. Placement with the grandparents in Texas would not have facilitated either alternative.

Further, the trial court reviewed the extensive evidence regarding the appropriate placement for the children. It also reviewed the history of the case, including a home study of the grandparents, their motions for placement and to intervene, and the reasons for delay, and noted that the grandparents had acted appropriately. The court specifically referred to § 19-3-605 and the mandate for preservation of the family unit. It nevertheless found that placement with the foster parents was in the children's best interests and that the evidence was sufficiently compelling to overcome the preference set forth in § 19-3-605. The court also determined that the delay between the termination of the parents' rights and the custody hearing was necessary to allow the trial court to have as much information as possible to determine the children's best interests.

Thus, placement with the foster parents in Colorado was for the purpose of strengthening family ties and securing a potential relative placement within the state. *See* §§ 19-1-102(1)(b), 19-3-605, C.R.S.2001. Accordingly, the record supports the trial court's finding that the Department acted appropriately, and the finding will not be disturbed on review. *See People in Interest of C.A.K.*, *supra*. It also supports a determination that the court did not ignore the statutory preference for a relative placement or unduly delay permanent placement.

### II.

The grandparents next contend that the trial court erred in considering their age in determining the children's best interests. They argue that consideration of their age violated the Department of Human Services

rules and regulations, which require compliance with federal anti-discrimination law. Again, we find no error.

Pursuant to the Department's rules and regulations, denial of aid, services, or benefits solely on the basis of age is prohibited. Dep't of Human Services Reg. No. 7.000.71A, 12 Code Colo. Regs. 2509–1.

■ However, the age of prospective caregivers may properly be considered, together with other factors, in determining whether a placement is in a child's best interests. Such a consideration is implicit in the regulation so long as it is not the sole basis for denial. And, courts in other jurisdictions have considered this factor. *See Adoption of Michelle T.,* 44 Cal.App.3d 699, 117 Cal.Rptr. 856 (1975); *In re Marriage of Carrico,* 284 N.W.2d 251 (Iowa 1979); *Merrill v. Berlin,* 316 Mass. 87, 54 N.E.2d 674 (1944); *In re Jennifer A.,* 225 A.D.2d 204, 650 N.Y.S.2d 691 (1996); *In re Adoption of Tachick,* 60 Wis.2d 540, 210 N.W.2d 865 (1973).

Here, the Department did not deny the grandparents any aid, services, or benefits solely on the basis of their age. Furthermore, even though the trial court considered the grandparents' age in determining the children's best interests, it attributed little weight to it. Instead, as set forth more fully below, proper consideration of numerous other factors formed the basis of the trial court's finding concerning the children's best interests.

■ Because the trial court's finding was not based solely on the grandparents' age, we find no error. *See* Dep't of Human Services Reg. No. 7.000.71; *Adoption of Michelle T., supra; In re Marriage of Carrico, supra; Merrill v. Berlin, supra; In re Jennifer A., supra; In re Adoption of Tachick, supra.*

## III.

The grandparents also contend that the trial court erred in finding that the foster parents were the children's psychological parents and that, therefore, adoption by the foster parents was in the children's best interests. They argue that, in the absence of a comprehensive parenting time evaluation, the evidence was insufficient to support the trial court's findings. We disagree.

■ In determining a child's best interests in a custody proceeding, the trial court may consider the child's psychological attachment to potential caregivers and the potential harm the child may sustain if the attachment is severed. *See In re Custody of C.C.R.S.,* 892 P.2d 246 (Colo.1995).

Although a comprehensive parenting time evaluation was not conducted here, the trial court was privy to a parenting evaluation of the foster parents, the children's psychological evaluations, and an interactional evaluation of the grandparents and the children. The trial court also heard testimony from the children's therapist.

The psychologist who conducted the parenting evaluation of the foster parents, as well as the children's psychological evaluations, testified that the foster parents were the children's psychological parents. According to the psychologist, because the children had suffered the loss of several important relationships, they were at extreme risk of emotional damage if the relationship with the foster parents were disrupted. Despite the psychologist's bias toward placement with family members, she recommended continuing the children's placement with the foster parents so that the children's psychological attachment could be maintained. Finally, the psychologist testified that the children's fragile emotional conditions required an immediate, final, and permanent decision as to their placement.

The grandparents' interactional evaluation was also favorable. The psychologist who conducted that evaluation testified that the children were securely attached to the grandparents, that the grandparents had good parenting skills, and that loss of the grandparents would be significant to the children. The psychologist, who had reviewed the parenting evaluation of the foster parents, also testified that the children would suffer significant loss if their relationship with the foster parents were severed and that disruption of that relationship could cause attachment problems. Because he had not evaluated the foster parents, the psychologist was unable

to make a custody recommendation and recommended a comprehensive parenting time evaluation.

Additionally, the children's therapist testified that, despite their fear of abandonment and inability to trust, the children were securely attached to the foster parents and were at high risk of emotional harm if the relationship were disrupted. Finally, the therapist testified that the lack of a permanent home was exacerbating the children's emotional problems.

■ Thus, even though a comprehensive parenting time evaluation was not conducted, the record contains ample competent evidence supporting the trial court's findings concerning the children's psychological parents and their best interests. Accordingly, the findings will not be disturbed on review. *See People in Interest of C.A.K., supra.*

### IV.

Arguing that they have no enforceable right to visitation following termination, *see People in Interest of J.W.W.*, 936 P.2d 599 (Colo.App.1997), the grandparents contend that the trial court erred in finding that it could impose sanctions if the foster parents refused to permit ongoing contact between the grandparents and the children. We find no reversible error.

■ The grandparents misconstrue the trial court's order. The order stated that "the Court may have some other remedial sanctions that it can impose [if the foster parents do not allow contact], I don't know that because that's not before me." Thus, that issue was not addressed. Consequently, the trial court's comments about possible sanctions were obiter dicta and do not give rise to reversible error.

The order is affirmed.

Judge PLANK and Judge ROY concur.